## WILEY STEPHENS v. THE STATE.

### No. 1501. Decided March 27, 1912.

**1.—Murder—Evidence—Explanation.**

Where, upn trial of murder, the defense testimony had fully explained the testimony of the State as to certain particular offenses with which defendant had been charged, there was no error in sustaining an objection to further permit the defendant to testify in this regard.

**2.—Same—Charge of Court—Argument of Counsel—Bill of Exceptions.**

Where the bill of exceptions with reference to objections to the argument of State's counsel, in connection with a refused charge, did not explain the matter in such a way as to show what was done and said, and present the matter so as to show this court where error was committed, the matter could not be reviewed.

**3.—Same—Charge of Court—Self-Defense.**

Where the court's charge on self-defense, with reference to preventing robbery, instructed the jury that if it reasonably appeared to the defendant by the acts, words, etc., of deceased, there was no reversible error, even if it be conceded that the deceased uttered no words at the time, as this was to defendant's advantage, the charge being otherwise correct.

**4.—Same—Newly Discovered Evidence.**

There was nothing in defendant's motion for new trial, wherein he claimed that if he had known it. at the time, he would have shown by a State's witness that in his opinion the testimony of deceased's mother with reference to seeing deceased was not true because it was too dark, as this was inadmissible in that form and is not newly discovered evidence.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder in the second degree; penalty, nine years imprisonment in the penitentiary.

The opinion states the case.

*Uvalde Burns* and *Leonard Doughty,* for appellant.—On question of proof of specific acts and offenses in connection with defendant's reputation: State v. Greenburg, 59 Kan., 404.

On question of reasonable apprehension of danger: Lankster v. State, 42 Texas Crim. Rep., 360.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On January 28, 1911, appellant was indicted for the murder of Clarence Cook on January 20, 1911, tried, convicted of murder in the second degree and his penalty fixed at ten years in the penitentiary.

The killing is shown to have occurred in the outskirts of the city of Houston in the early morning about or just after 5:30 a. m. The appellant had been to the city of Houston in a milk wagon and was returning to his employer's along one of the public roads or streets with a large reflector lamp on the front of his wagon, which

lighted up considerable space where his team was and in front and more or less to each side. The witnesses disagreed as to whether it was light, either natural because of the break of day, or because of the electric lights in the immediate vicinity. Some testified that it was light enough, without the lights, to see and distinguish, some of them testified that it was too dark to do so, others that the city lights were on and because of that it was light enough to see, and others that the city lights were not burning at that time.

The deceased lived, fronting this public road or street, right near thereto. He was in the habit, and had been for a long time, of milking early and then driving his cows across the public road from his residence and putting them into a pasture across the road or street; that he had done so that morning; had just placed his cows in the pasture, closed the gate and was returning across this road or street to his residence; that just as he was in the act of crossing the ditch of the road or street, made by throwing up therefrom towards the center the dirt, and before he got either in front or near to the appellant's team, and without and provocation whatever, the appellant shot and killed him. Appellant's theory and testimony was to the effect that he was a new hand at driving this milk wagon; that shortly prior thereto, of which he was fully informed, someone along this same road or street had robbed a previous driver of his employer, and had attempted a second robbery of this previous driver; that because thereof that driver had quit and he had been employed instead. It was shown, however, that where the previous robbery and attempted robbery is reported to have occurred was some distance; one of the witnesses who investigated the matter at the time and the most reliable testimony on the subject shows that it was fully a mile distant from this point to where the previous robbery or attempt had occurred. The appellant claimed that the deceased suddenly emerged from the side of the road or street, ran in front of and caught his team and attempted or turned them partially around and refused to turn them loose and that he, believing or thinking that it was an attempt by the deceased to rob him, shot and killed him. The testimony, without contradiction, shows that as soon as he shot him he ran his horses at full speed away from there, and refused to stop or be stopped where he was hailed and attempted to be stopped some two or three hundred yards distant and he went on to his employer's, told no one about it and went to bed and went to sleep, where the officer found him some two or three hours later.

The testimony by the State shows that the deceased did not rob or attempt to rob the appellant, and did not catch or attempt to catch his team, but that before he got anywhere near in front of the appellant's team, or near to them the appellant, without any provocation or demonstration whatever, shot and killed him as he passed him with his wagon.

The court gave a correct charge on murder in the first and second degrees, manslaughter, self-defense and justifiable homicide to prevent robbery or an attempted robbery; and also charged correctly on circumstantial evidence.

The appellant introduced several witnesses who testified that they knew appellant and his reputation was good for being honest, peaceable, quiet, law-abiding and law-respecting. On cross-examination of these witnesses the State contested it, and among other things proved by some of them that on one occasion, not a great while before this killing, the appellant had beaten severely another negro over the head with a six-shooter and that he was accused of stealing sixty dollars from a railroad agent at another time, and perhaps other offenses of minor importance. The State also introduced some witnesses who testified that appellant's reputation in the said particulars was bad. After the State had crossed appellant witnesses as to the particular offenses of which he was charged, the appellant on redirect examination of these same witnesses had them to explain fully each of these offenses with which he had been charged. The one about beating another negro over the head with a six-shooter was that the negro was mistreating and assaulting the appellant's sister and that he, appellant, who was much larger, interfered, took the assaulting negro's pistol away from him and beat him severely over the head and afterwards plead guilty and paid a fine therefor. That as to the theft of the sixty dollars, it was fully explained by appellant's witnesses on redirect examination of them after the facts had been brought out by the State on cross-examination, that at the time the appellant was working for one of the railroads and it was due him $28 as wages; that he asked the agent for his wages and upon the agent demanding a voucher which he did not then have he did not pay him, but that the agent counted out on the table or counter $60 for another purpose, and that upon turning his back upon appellant, and engaging in his duties, the appellant took the $60, put it in his pocket and walked off therewith. That the agent later discovered that the money was gone, and called the sheriff and told him of the circumstances and the sheriff went to the appellant, accused him of it, and appellant delivered to the sheriff the $60, claiming to the sheriff at the time that he thought the agent had counted the money out for him and he took it on that account. That the grand jury afterwards investigated the matter and declined to indict the appellant on that account. It is unnecessary to detail further the full explanation that was made at the time by the appellant's witnesses who had testified on the subject.

The appellant presented to the court what he claimed to be bills of exceptions showing that he had objected to the State bringing out these matters on cross-examination of his witnesses. The court refused these bills, because the testimony was not objected to in any

way by the appellant at the time. The court then states completely
and fully what the facts are, substantially, as we have detailed above.

When appellant was on the stand himself, after testifying fully
about how and when the killing had occurred, and after being
crossed on those subjects alone by the State, he was turned back to
the appellant's attorney. The appellant's attorney then attempted
by appellant himself to again go into a full detailed explanation of
the assault by him and the occasion therefor, upon his brother-in-
law, above stated and of the charge of the theft of the money above
detailed. The State objected to that being further gone into, among
other reasons, because he had not asked the appellant anything on
the subject at all. The court sustained the State's objections and
refused to permit the appellant to detail the matters again, because
it was all gone over and explained by the direct and cross and re-
direct examination of the several witnesses when it was first brought
out and as the district attorney asked the appellant no questions
thereabouts. "Therefore, the court refused "to have a trial of those
transactions through the testimony of the defendant." As stated
above, the appellant's witnesses testified and explained the charges
and the occasion therefor against appellant as fully as the bill shows
he himself would have done in his testimony if he had been per-
mitted to go into it. It is our opinion that as the matter is pre-
sented, the court committed no error in any of these matters.

The appellant has another bill in which he claims the court erred
in refusing to instruct the jury this: "That it is not necessary for
you to find or believe from the evidence that deceased was engaged
in an attempt to rob defendant when he shot him, but as stated
elsewhere, in this charge, you shall consider whether the defendant
acted upon a reasonable apprehension of danger." This, he com-
plains, should have been given, because the district attorney in his
closing argument had argued to the jury that it was necessary for
them to find that the deceased was a robber and engaged in an at-
tempt to rob the appellant when the appellant shot him, and that
appellant's counsel were by insinuations asking them to subscribe
to that terrible charge against the dead boy which they dared not
openly charge. The court, in explaining this bill, states that he did
not know, nor remember the exact language of the district attorney
in his closing argument, but whatever it was, there was no objection
made thereto at the time by appellant; that the appellant's attorney
did hand to the court the above special charge which he refused, not
then knowing that the district attorney had used the language therein
set out and that his attention was not called to such language if he
did use it. The attorneys on both sides of a case are and must
necessarily be allowed considerable latitude in argument before the
jury. We are inclined to believe that perhaps the district attorney
in this case would have been justified in making some such argument
as was claimed was made by this bill, but the bill does not explain

the matter to such an extent and in such a way as to what was done and said, the surrounding circumstances, the state of proof and the appellant's attorney's argument so as to show this court thereby that any error was committed. Hence, as the matter is presented to us no reversible error is shown.

By his amended motion for new trial, appellant has some complaints of the charge of the court. By one of these he quotes excerpts from sentences of the court's charge as follows: "The words of the court's charge being, in various portions of the main charge: 'Homicide is justified by law when committed . . . for the purpose of preventing the offense of robbery. If you believe from the evidence . . . that defendant,' . . . not for the purpose of preventing robbery . . . 'did . . . kill Clarence Cook,' etc.

"And again in the main charge in defense of killing under reasonable fear of robbery, the court erroneously charged 'homicide is permited by law when' in-'flicted for the purpose of preventing the offense of robbery when the killing takes place under the following circumstances.'

"And the court thereupon enumerates certain circumstances necessary before a person can justifiably kill even a robber." These excerpts seem to be taken from a portion of the court's charge on self-defense in favor of appellant and on justifiable homicide to prevent robbery, in altogether different places and paragraphs of the court's charge. As we understand the complaints, it is our opinion that there is nothing in them. It was essential for the court in submitting the various issues to the jury to properly tell them, as he did, in various ways, that if the appellant killed the deceased for the purpose of preventing the deceased from robbing him, or attempting to rob him, then they would find the defendant not guilty. The court in charging on justifiable homicide to prevent robbery or an attempt to rob follows substantially if not literally the statute on that subject. The appellant complains that in the general definition by the court of justifiable homicide to prevent robbery or an attempt to rob that the evidence did not call for that portion of the statutory definition which says it must reasonably appear to the defendant by the acts "or by words coupled with the acts," etc., of the person killed, because there was no testimony showing that the deceased uttered any words at all. No witness does say that the deceased said anything, but the testimony of the appellant, himself, to the effect that the deceased got in front of, took hold of, stopped and turned his team partially around "and would not turn them loose" would indicate by circumstances that he did or might have said something at the time, coupled with his acts as detailed by appellant. It is true, the other witnesses all disputed appellant as to what actively occurred at the time, yet it was proper for the court in his charge to give the appellant the benefit, as it did, of his testimony on the point, and as we construe the evidence the court might properly have used the

statutory expression as quoted above "or by words coupled with the acts." At any rate, even if it be conceded that the deceased did not utter any words at the time of his claimed acts by appellant, yet, as we see it, this, instead of being to appellant's detriment, was to his advantage and was no reversible error by the court. As to that part of appellant's complaint that the court in his charge did not submit that the acts of the deceased as claimed by the appellant at the time he killed him were to be viewed as they appeared to the defendant at the time, the court did submit that specific question properly to the jury. Even the appellant in his refused requested charge, copied above, expressly states "but as stated elsewhere in this charge, you shall consider whether the defendant acted upon a reasonable apprehension of danger."

As stated above, the court correctly and fully charged on murder in the first and second degrees, manslaughter, self-defense, justifiable homicide to prevent robbery and circumstantial evidence. He also properly charged the jury on reasonable doubt as to the different degrees of homicide and in addition generally the reasonable doubt. All these matters were properly before the jury. The evidence from the State's standpoint is amply sufficient to support the verdict.

There is nothing in that ground of appellant's motion for new trial wherein he claims that if he had known it at the time, he would have had one of the State's witnesses, who was introduced and testified and fully crossed by appellant, testify that in his opinion the testimony of deceased's mother that she saw the deceased and what he was doing and where he was at the time appellant shot and killed him could not have been true, because it was too dark for her to have seen him. This testimony, in that form, would not have been admissible. Whether or not deceased's mother did see what she testified could not have been disputed by any other, stating that she did not see it. As stated above in the general statement of the case, the question of whether or not it was light or dark was fully gone into by both sides and this particular witness, on cross-examination by the appellant, testified that it was dark and in effect a person could not be seen any distance, while others, as stated, testified that it was light enough, although early in the morning, to see and that they did see, and, in addition, some testified that the artificial lights were burning sufficient to show everything and others that they were not burning. Of course, appellant knew all this at that time, and that some witness would now swear that the deceased's mother could not have seen what she testified to, would not be newly discovered testimony and would not authorize a new trial. There being no reversible error, the judgment will be affirmed.

*Affirmed.*