### I. W. MEDFORD v. THE STATE.

No. 5439.    Decided November 19, 1919.

1.—Murder—Evidence—Self-serving Declaration.

Where, upon trial of murder, the defendant urged that as the State had introduced testimony of threats by the defendant and showing malice resulting from a former difficulty between the parties, the defendant should be allowed to introduce in evidence a conversation he had with certain officers to put the deceased under a peace bond, etc., to show that he was the aggressor, and in rebuttal of the State's evidence, and as corroborative statements of defendant's testimony, but the proposed testimony did not show that defendant had made any effort actually seeking peace or protection, the same was not admissible in evidence and was self-serving declarations. Following: Poole v. State, 45 Texas Crim. Rep., 348; Hutchinson v. State, 58 Texas Crim. Rep., 228 and other cases.

2.—Same—Self-defense—Charge of Court—Bill of Exceptions.

This court is not called upon to inspect the entire charge or to speculate as to which particular portion of the various paragraphs therein on self-defense might be meant, and a general objection to the court's charge on self-defense cannot be considered on appeal; besides the requested charge did not contain the law.

**3.—Same—Defense of Another—Charge of Court—Reversible Error.**

Where, upon trial of murder, the defendant testified that he acted in self-defense and defense of his son, it was the duty of the trial court to charge upon all the issues made by the testimony either of the defendant or the State, and he should have submitted a charge upon this phase of the case, as requested.

**4.—Same—Threats—Deadly Weapon—Charge of Court.**

Where, upon trial of murder, defendant's requested charges on threats and the use of a deadly weapon were both insufficient under the law, there was no error in refusing them under the facts of the instant case.

**5.—Same—Defendant's Standpoint—Charge of Court—Objections to Charge.**

In the absence of an objection to the court's charge in failing to submit the proposition that the occurence must be viewed from defendant's standpoint, the same cannot be considered on appeal.

Appeal from the District Court of Coryell. Tried below before the Hon. J. H. Arnold, judge.
ment in the penitentiary.

Appeal from a conviction of murder; penalty, five years imprison-
The opinion states the case.

*McClellan & McClellan* and *A. R. Eidson,* for appellant.—On question of conversation with officers as not self-serving declarations; Everett v. State, 30 Texas Crim. App., 682; Butler v. State, 33 Texas Crim. Rep., 232; Ward v. State, 78 Texas Crim. Rep., 121, 180 S. W. Rep., 239; Schauer v. State, 60 S. W. Rep., 249.

On question of court's charge on self-defense: Hayes v. State, 82 Texas Crim. Rep., 427, 199 S. W. Rep., 621; Alsup v. State, 210 S. W. Rep., 195.

On question of court's failure to charge on threats: Knight v. State, 55 Texas Crim. Rep., 243, 116 S. W. Rep., 56; Swain v. State, 86 S. W. Rep., 335; Penton v. State, 53 Texas Crim. Rep., 323, 109 S. W. Rep., 937; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64.

On question of court's charge in failing to submit requested charge on defense of another: Glover v. State, 33 Texas Crim. Rep., 224; Branch Criminal Law, 454 and 455.

On question of deadly weapon used by deceased; Bankston v. State, 76 Texas Crim. Rep., 504, 175 S. W. Rep., 1068; Hammons v. State, 77 Texas Crim. Rep., 116, 177 S. W. Rep., 493; Edward v. State, 68 Texas Crim. Rep., 197, 151 S. W. Rep., 294; Branch Criminal Law, section 475-476.

*John Maxwell,* Assistant Attorney General, *G. E. Johnson,* District Attorney, *H. E. Bell,* for state.—On question of placing deceased under peacebond, etc.: Potts v. State, 56 Texas Crim. Rep., 39,

118 S. W. Rep., 535; Hutchinson v. State, 58 Texas Crim. Rep., 228, 125 S. W. Rep., 19; Hardeman v. State, 61 Texas Crim. Rep., 111, 133 S. W. Rep., 1056; Hart v. State, 37 Texas Crim. Rep., 21, 121 S. W. Rep., 508.

On question of bill of exceptions and objections to court's charge: Salter v. State, 78 Texas Crim. Rep., 325, 180 S. W. Rep., 692; Johnson v. State, 81 Texas Crim. Rep., 71, 193 S. W. Rep., 674.

On question of standpoint of defendant: Hays v. State, 82 Texas v. State, Crim. Rep., 427, 199 S. W. Rep., 621.

LATTIMORE, JUDGE.—Appellant was given a sentence for five years in the District Court of Coryell County, for the murder of one Pieper.

The two men were neighbors—tenants on the same farm, used water from the same well, and worked adjoining fields.

About two years before the homicide, they had a difficulty, in which appellant made the first assault, and in which he cut deceased with a knife, and about which trouble there was the usual difference in the testimony of the State and appellant. It is agreed that from that time the two men had no communication with each other, and did not speak when they met.

On the occasion of the homicide, appellant and deceased, with their children, were leaving their respective fields to go home, in the late afternoon; near the well, a first fight took place between a young son of each of the parties. As to what followed, the version of appellant and his family was, that deceased called to his son not to run from appellant's boy, and that he would go to the house and get his gun, and come and kill him, or them, and that he did go and get his gun and a number of shells filled with BB shot, and came out into his corn from which place the shooting occurred. The version of the family of deceased of what occurred after the fight between the boys, is that appellant made a very ugly threat, ran to his home, got his Winchester rifle, and came out into his yard near a tree, and fired at deceased, then to his barn, from which place he fired other shots at deceased, one of said shots taking effect in the wrist of deceased, and the last shot going through the body of deceased, producing almost instant death.

There was testimony from a neighbor at work in his field near by, to the effect that deceased fired the first shot, but that when the last shot was fired, deceased was walking from where he had been during the firing, toward his house, appellant firing the shot that killed him from within his own barn. Appellant testified that several shots from the first firing by deceased struck him, but caused no serious injury. He claimed to have shown to the sheriff a place on his finger where one of the shot struck, but the sheriff said he saw no signs of injury.

The first contention made by appellant here, is that he should have been allowed to testify himself, and to prove by the justice of the peace and constable of a nearby precinct in the adjoining county of McLennan, that a month or two before the killing, appellant talked with said officers, and as to what was then said. It appears from the recitals of the bill taken to the refusal of this testimony, that he offered to state that he advised with said officers with reference to putting deceased under a peace bond, because he was afraid of deceased; that deceased had threatened him, and had bought a shot-gun, and he was afraid deceased would kill him with said gun. He further proposed to show that he told said officers about the previous trouble he and deceased had some two years before; that he wanted to get along at peace with deceased, and have no trouble with him, as he had no ill-will or hatred toward deceased, and would be friendly with him if deceased would permit him to be so. That he was afraid of serious trouble, and all he wanted was protection by the officers of the law.

Substantially the same matters appear in bills of exception to the refusal of the evidence of said officers.

It is urged that as the State had introduced various statements of appellant, in the nature of threats, and as showing malice resulting from the former difficulty between the parties, that appellant should be allowed to introduce this conversation with said officers on the issue of manslaughter, and as tending to show who was the aggressor at the time of the killing, and as rebutting the evidence of the State of threats and malicious statements by appellant, and as corroborative of the statements of appellant on the witness stand in the instant case.

The statements offered cannot be admissible as corroborative of the testimony of appellant as a witness. One who is impeached by proof of a former statement contradicting those now given, may be sustained by proof that on other occasions said witness made the same or similar statements, but that is as far as the permission goes. The statements offered were not the same or similar statements to those testified to by the State's witnesses as growing out of the former difficulty of the parties. Neither do we think one can rebut evidence of threats or malice, or show who was the aggressor in the fatal encounter, by such proof as that offered, and we think the authorities cited by counsel for appellant were misapprehended. No effort of appellant to place deceased under a peace bond, was in fact shown or offered. The proposed testimony was not explanatory of any act of appellant in evidence, nor was it claimed that at the time of such purported conversation, appellant was making any effort to pacify deceased, or settle any difference or difficulty, or to effect an understanding with him. In each of the authorities cited by appellant, the accused was actually seeking peace or protection, or a settlement

of impending trouble, and the statements offered, and held by this Court to be admissible, were accompanied by acts of which the same were explanatory and became a necessary part.—Poole v. State, 45 Texas Crim. Rep., 348; Everett v. State, 30 Texas Crim. App., 682; Butler v. State, 33 Texas Crim. Rep., 232; Schauer v. State, 60 S. W. R., 249; Nelson v. State, 58 S. W. R., 107.

The statements of appellant were unaccompanied by any acts, and were self-serving and inadmissible.—Hutchinson v. State, 58 Texas Crim. Rep., 228. 125 S. W. R., 19; Hardeman v. State, 61 Texas Crim. Rep., 111, 133 S. W. R., 1056; Atkinson v. State, 30 S. W. R., 1065.

Appellant's bill of Exceptions No. 8 complains of the court's charge on self-defense, and in connection therewith, we are asked to consider appellant's special charge No. 1. Said bill of exceptions contains no quotation from the charge, and refers to no paragraph thereof; and uses the following language: "Defendant presented objections and exceptions to the court's charge on the law of self-defense, and to that part of the court's charge wherein he applies the law directly to this case, and especially to the court's charge, because said charge did not," etc. This is manifestly not sufficient to call for our consideration. We are not called upon, under the rules, to inspect the entire charge, nor to speculate as to which particular portion of the various paragraphs on self-defense might be meant. The special charge No. 1 contains a statement just the reverse of the law, as we understand it, as same seeks to instruct the jury that if they have a reasonable doubt as to whether the defendant killed the deceased in self-defense, they should find him not guilty.

Appellant asked the following special charge, which was refused, to wit:

"You are charged that the defendant had the same right to protect his son against death or serious bodily injury that he would have to protect his own person. You are, therefore, charged, that the defendant had the right, if it reasonably appeared to him, viewed from his standpoint, that the deceased was about to make an assault upon his said son, to arm himself and come to the rescue and protection of his said son, and if the defendant, in preparing to protect his son was assaulted by the deceased or it reasonably appeared to defendant, from the words, coupled with the acts of the deceased, that defendant was in danger of death or serious bodily injury, and he fired and killed deceased, defendant should not be guilty, and you will so find, in case you have a reasonable doubt and find him not guilty."

It is the duty of the trial court to charge all the issues made by the testimony, no matter whether the same are raised by the testimony of the accused, or some other witness. Appellant testified as follows:

86 Texas—16

"I was something about 40 yards from the well and Louis and Richard began to fight. Of my own knowledge I do not know what they began to fight about. When I got even with the well, they had done quit fighting, but Mr. Pieper jumped out of the old hack, and said: "Don't run from the God damned son-of-a-bitch, Richard—if, you can't kill him with your knife, I am coming with my gun—kill him." That was the first words I heard—those were Mr. Pieper's exact words—I heard him say them. He was, at that time, straight through, 350 yards from the boys, and he was about the same distance from me—I was about even with the well. I had nothing on earth to do with the boys fighting. The fight was over before I got near the boys. When Mr. Pieper said what I have just stated, he went toward the house, and about that time some mules they had ran between him and myself—a pair of mules, and they ran out—I don't know how Mr. Pieper got the gun, but directly he came walking back waving the gun and the mules were between him and myself—he must have gotten half way to the well, waving that gun, and hallooing—I didn't hear what he was saying, but he had the gun going toward Louis and Richard. Louis and Richard had stopped fighting at that time, but I couldn't say how far apart they were—that was after Richard ran and Louis turned back—I suppose 8 or 10 steps toward the well to get water. When I saw Mr. Pieper coming with his gun, I went into the house and got my gun. I got my gun to protect my boy, and for no other cause on earth. When I came out with the gun, I stepped over the fence. I was still on my land. Mr. Pieper was in the road. I said: "Go back, Pieper, the kids have quit fighting," and I could see the bulk of him as he stepped into the corn, going back to the house, and as he got in a direct line with me, in the corn rows, he raised and shot at me."

Under the above testimony, appellant had a right to have substantially the issue contained in his special charge No. 3, submitted to the jury. If in fact there appeared to him to be a necessity for his interposition to protect his son from unlawful violence, which was a question of fact for the jury, and not for the court, and if appellant's acts in procuring his gun and arming himself, were for that purpose alone, or for the purpose of protecting himself and his son, and if such preparatory acts caused an unlawful attack upon him, and in his own necessary self-defense he shot and killed deceased, he would not be guilty of any offense. This theory of appellant might be contradicted by other evidence in the case, but this would not relieve the trial court of the imperative duty of submitting the law thereof.

Appellant's requested charges on threats and the use of a deadly weapon, are both insufficient as we understand the law. It is manifest that an instruction that if one has made threats, and at the time of the homicide did something showing an intention to execute

such threats, his slayer should be held not guilty, is not a full and correct statement of the law. Such a charge says too much and too little.

Nor does the use of a weapon calculated to produce death always carry with it the presumption of intent to kill or inflict serious bodily injury. The element of the manner of use of such weapon must always be taken into consideration. A shotgun at such long range as to make it reasonably apparent that death or serious bodily injury could not result from its use, would not be legally a deadly weapon.—Scott v. State, 46 Texas Crim. Rep., 317.

There was no exception to the court's charge for the claim of failure to submit the proposition that the occurrence must be viewed from appellant's standpoint, and we cannot consider this contention of appellant. The other errors complained of will probably not arise on another trial.

For the reasons herein stated, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*