## Roy Carson v. The State.

### No. 6139.  Decided May 19, 1921.

**1.—Aggravated Assault—Mutual Combat—Charge of Court—Self—Defense.**

The issue of mutual combat, as a limitation upon the right of self-defense, does not arise alone from the fact that the parties to the affray are mutually engaged in it. The issue arises out of an antecedent agreement to fight. The agreement must exist, but may be proved by circumstances. Following Reese v. State, 49 Texas Crim. Rep., 243, and other cases, and where the evidence did not raise the issue of mutual combat, under this rule, it was reversible error to so charge the jury.

**2.—Same—Self-Defense—Charge of Court—Requested Charge.**

Where upon trial of aggravated assault the court in a general way charged on the issue of self-defense, he should have submitted a requested charge which was in a more definite and affirmative form. Following Knight v. State, 84 Texas Crim. Rep., 396, and other cases.

Appeal from the District Court of Archer. Tried below before the Honorable H. F. Weldon.

Appeal from a conviction of aggravated assault; penalty, a fine of $250 and thirty days in jail.

The opinion states the case.

*Martin & O'Neal,* for appellant.—On question of mutual combat: Cotton v. State, 217 S. W. Rep., 158, and cases cited in opinion.

*C. M. Cureton, Attorney General,* and *Wallace Hawkins,* for the State.

MORROW, Presiding Judge.—Conviction is for aggravated assault; punishment fixed at a fine of $250 and confinement of thirty days in jail.

The appellant, Roy Carson, and his brother, Ray Carson, were young men around twenty years of age. Averill, the injured party, was a man something over thirty years of age. The appellant shot Averill and wounded him. The shots were fired while the appellant, his brother Ray and Averill were on the street in front of the place of business of the appellant. Averill was a man of much greater strength than either the appellant or his brother, and bore the reputation of a pugnacious individual.

Some months before, a business transaction had taken place in which Averill admitted his indebtedness of garage charges to the appellant and his brother, and later, when Ray Carson, in company with his mother, stopped at the place at which Averill was working for the purpose of collecting the account, Averill made an assault upon Ray Carson in which Ray was beaten with the fists of his assailant.

Immediately before the difficulty with the appellant, Averill chased Ray Carson from some point on the street to the garage door and kicked him as he went in, using towards him harsh language. This took place in the presence of the appellant. While Averill was chasing Ray Carson, the latter hollered a number of times to his brother for help. Hearing this appeal, appellant got his pistol which was in the garage. This happened just a few minutes before Ray Carson entered the garage in his flight from Averill.

Describing this Averill said: "He (Ray Carson) was going towards the garage. He hesitated and I started after him, hollered to him to stop and chased him, and as he got on the porch, I kicked him. He hollered to his brother and told his brother to get the gun. I turned and walked out in the street, and a lady ran across the street and tried to keep him from getting his gun. They were in the garage possibly ten or fifteen seconds. They came out, the appellant with an axle in his hand. He did not come outside the door until he set it down and pulled the gun out of his pocket. He came out, and his brother, the one I was after, came out in front of him. The one with the gun says: 'Now, hit him if you have got any nerve or guts.' In four or five seconds I struck at him and continued to strike at him, and the boy with the gun shot at me. The boy I was fighting turned and started off, and I took four or five steps when the man shot me in the back. I turned around and started after him and he ran. There was a brick lying there and I picked that up and threw it at the man who had the gun. About that time two men drove up and I jumped on the fender of the car and pulled a gun out from under the man's arm and stepped off the running board. As I did so one of the Carson boys was just coming out of the garage and evidently had seen what I was doing and was running toward the garage and just as he ran I pulled the trigger, but it was a hammerless gun and on the safety. I started after him and the man in the car told me it wasn't loaded."

Some of the facts testified to on behalf of the State are controverted, but treating them as having been found to be true, by the jury, the

legal question is presented whether, in connection with the charge on self-defense, the court was justified in instructing the jury in the following language:

"If you find and believe from the evidence that the defendant, Roy Carson, voluntarily engaged in combat with J. D. Averill at the time of the shooting, knowing at said time that said combat might result in death or serious bodily injury to one of the contestants, then and in that event the defendant would not have the right to shoot the said J. D. Averill in self-defense."

The issue of mutual combat as a limitation upon the right of self-defense, does not arise alone from the fact that the parties to the affray are mutually engaged in it. The issue arises out of an antecedent agreement to fight. The agreement must exist. Of course, it may be proved by direct testimony or inferred from circumstances. As said in Reese v. State, 49 Texas Crim. Rep., 243:

"Nor is there any mutual combat in it because two parties mutually fight; or do fight, and in that sense there is a mutuality of combat, does not suggest the issue of mutual combat which takes away the right of self-defense."

In the case in hand the record is bare of evidence indicating any prearrangement between the appellant and Averill to engage in combat. There is nothing to suggest that the appellant was aware of Averill's presence until the moment he beheld him pursuing Ray Carson and heard his brother's call for help. He armed himself, he says, to protect his brother. According to the State's theory, in a few seconds after Ray Carson entered the garage, he was again attacked by Averill, and the latter said that before he made this attack appellant used the words: "Now, hit him." This is denied, but granting its truth, it does not support the issue submitted. Waldon v. State, 34 Texas Crim. Rep., 93; Voight v. State, 53 Texas Crim. Rep., 268; Havard v. State, 55 Texas Crim. Rep., 214; Cotton v. State, 86 Texas Crim. Rep., 387, 217 S. W. Rep., 158.

There is some conflict in the evidence relating to the beginning of the difficulty between Ray Carson and Averill. From Ray Carson's statement it appears that while he was walking on the street and Averill sitting in his car, that Averill stared at him and he remarked: "Look at me;" and that Aevrill got out of the car and sought to assault him. He fled, calling on his brother for help.

Averill's testimony is not in conflict with this save that he declared that Ray Carson said: "Look, at me, you bastard." So far as disclosed by the record, this conflict is unimportant inasmuch as it is not suggested by any of the testimony that the appellant was aware of what took place prior to the time that his brother ran up to the garage, pursued by his assailant, except that he heard Ray call for help while he was under pursuit.

In testifying in his own behalf, appellant said that he was unaware of any difficulty until he heard his brother calling and heard

Mrs. Simpson call to him to go to his brother's aid; that he was in trouble; that he immediately got his pistol and about that time his brother came into the garage. His brother told him to put the gun up as Averill was outside. Upon his brother's going out of the garage. however, he took the pistol as a precaution to defend against any attack that Averill might make; that immediately upon their coming out of the garage Averill started to attack Ray, and appellant, knowing his superior strength and of the previous assault upon him, felt that his brother might be killed; that he requested Averill not to hit him. This being disregarded, the shot was fired. Averill then turned upon the appellant, according to his testimony, and stepped sideways in the direction of a gun that was in the car about three steps away, and believing that he would obtain and use the gun against him, he continued to shoot, though the shots failed to stop his assailant. With reference to his statement about calls for aid, he was corroborated by Mrs. Simpson, as well as his brother.

The court, in a general way, in his main charge on the issue of self-defense, applied it to the defense of Ray Carson as well as appellant. He sought, by a special charge, to have the issue submitted in a more definite and affirmative way, and upon another trial. this should be done. Voight v. State, 53 Texas Crim. Rep., 268; Scott v. State, 60 Texas Crim. Rep., 318, 131 S. W. Rep., 1072; Griffin v. State, 57 Texas Crim. Rep., 280, 122 S. W. Rep., 553: Medford v. State. 86 Texas Crim. Rep., 237, 216 S. W. Rep., 175; Knight v. State, 84 Texas Crim Rep., 396.

Believing that under the facts a charge qualifying appellant's right to act in self-defense by an instruction upon the law of mutual combat was not warranted, and that its effect cannot be viewed as otherwise than harmful to appellant's defense, we order that the judgment of the court be reversed and the cause remanded for another trial.

*Reversed and remanded.*