**Fidel LUJAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41229.**

Court of Criminal Appeals of Texas.

July 17, 1968.

Jack Connell, Wichita Falls, for appellant.

Stanley C. Kirk, Dist. Atty., John Bradshaw, Asst. Dist. Atty., Wichita Falls, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is murder without malice; the punishment, four years.

As ground for reversal, appellant contends that the trial court erred in charging on mutual combat.

Three witnesses testified for the State as to the circumstances surrounding the shooting of deceased.

Mrs. Gonzales, the owner of the establishment where the shooting occurred, testified that on the night in question the deceased entered and began arguing with appellant. She then left the bar and while in her living quarters attached to the bar heard some shots fired.

The witness Galvan said that he was there when the deceased entered; that the deceased came over to appellant and had some words with him, which the witness

did not hear. He then heard appellant tell deceased to "Shut up", to which deceased replied that "he (appellant) couldn't shut him up." Galvan testified further:

"Q. Did they leave the Palmita Bar, or did they stay there all the time that night?

A. No, they walked outside.

Q. All right, were you standing there when they walked outside?

A. Yes, Sir."

The witness Tobar testified that he was present when the deceased came in and started talking with the appellant, but that he had no idea as to what they were talking about. He remembered Mrs. Gonzales talking with deceased, but did not hear the conversation. He testified that both the deceased and the appellant left, but that he did not recall which one left first.

The appellant testified substantially as follows: While he was seated on a stool at the bar, appellant was joined by deceased, who told him that "he (deceased) would have to kill me a s--o--b---- tonight." According to appellant, Tobar told the deceased to leave appellant alone. Deceased then told appellant to go outside with him. Deceased grabbed appellant and tried to jerk him off the stool, saying that if appellant would not go outside with him, he (deceased) would have to drag him (appellant) outside. Appellant refused to go outside with deceased. Again the deceased insisted that appellant accompany him outside, and again his requests were refused. Deceased then walked toward the side door, then returned to where appellant was seated, grabbed him by the left arm and dragged him toward the door. Upon reaching the door, deceased opened the door, and pulled appellant outside, whereupon deceased began beating appellant with his one hand while holding him with the other, threatening him and calling him obscene names, and said, thrusting his right hand into his right pocket, "I have something for you." At this juncture, appellant secured and fired his pistol, causing the death of the deceased.

This Court, in Carson v. State, 89 Tex. Cr.R. 342, 230 S.W. 997, said, "the issue (of mutual combat) arises out of an antecedent agreement to fight. The agreement must exist." Here, as in Carson, supra, the antecedent agreement was not shown, and thus the charge on mutual combat was unwarranted and erroneous as a limitation upon the appellant's right of self-defense. See Daniel v. State, 171 Tex.Cr.R. 30, 344 S.W.2d 164.

For the error pointed out, the conviction is reversed and the cause remanded.

WOODLEY, P. J., dissents.