**Cecil Richard DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43800.**

Court of Criminal Appeals of Texas.

May 26, 1971.

———◆———

Robert Mitchell (court appointed), A. L. Hernden, San Antonio, for appellant.

Ted Butler, Dist. Atty., John L. Quinlan, III, Miles L. Johnsen and Lucien B. Campbell, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder with the punishment assessed at 35 years.

In his sole ground of error appellant contends the trial court erred in failing to instruct the jury on the law of justifiable homicide to prevent a robbery, although the issue was raised by the evidence. See Article 1222, Vernon's Ann.P.C.

The record reflects that the homicide in question occurred during the early morning hours of July 28, 1969, near the corner of New Braunfels Avenue and Blain Street in the city of San Antonio. The 19 year old deceased, Teodoro Ayala, and 15 year old Gerald Gomez drove by the said intersection and observed Amparo Urbano, a prostitute, who was soliciting occupants of passing automobiles. After conversing with this member of the world's oldest profession about a "date" and stating they did not have the $12.00 requested, the deceased and Gomez drove off. Circling the block in the deceased's car, they returned and advised Miss Urbano that they now had the correct amount of money. The deceased emerged from the car and walked with Miss Urbano toward a nearby shack where the "date" was to be consummated. The deceased entered the house, then suddenly Miss Urbano closed the door and fled. The deceased followed in hot pursuit. He overtook her at the intersection and grabbed her. They fell to the ground struggling and she screamed the appellant Davis' name.

The appellant Davis was seated in a nearby car and had been observing the unraveling events.

The appellant left his car and approached the scene of the struggle with a pistol. When he fired once, the deceased stopped struggling with Miss Urbano, got to his feet and ran in the direction of his parked automobile. The appellant fired a second time, hitting the deceased who was some fifty yards away, in the back of the head inflicting a mortal wound.

The appellant, Miss Urbano and a friend immediately left the scene in appellant's car, although Miss Urbano later returned to the scene and identified herself to the police as the woman involved.

At the hospital where the deceased's body was taken, no money was found on the body, although Gomez testified he had earlier given the deceased two dollars and did not know how much money the deceased had himself at the time.

Amparo Urbano was called as a defense witness. During the course of her testimony she revealed she had been living with the appellant who was her "pimp" and that she, at the time of the alleged offense, was five months' pregnant with his child; that he had forced her to work the night of the alleged offense.

She testified that as the deceased entered the shack she saw a knife in his hand and that for this reason she fled. She denied having taken any money from the deceased before fleeing.

Testifying in his own behalf, appellant admitted living with Miss Urbano but denied being her "pimp." He related that he

was just sitting in his car near the intersection since he had nothing to do as the pool hall had closed for the night. He stated he observed a knife in the deceased's possession during the scuffle with Miss Urbano and that he fired in protection of her. He did not testify that he believed that the deceased was committing a robbery.

No knife was found at the scene or on the deceased's person. The appellant offered the testimony of a witness who claimed he saw some young people pick up the knife lying near the body of the deceased before the police arrived.

The court charged the jury on the issue of justifiable homicide to protect another person from unlawful violence[1] but refused the written objection for failure to charge on the law of justifiable homicide to prevent a robbery.

It is clear that such an instruction need not be given unless the issue is raised by the evidence. Bryant v. State, 99 Tex.Cr. R. 600, 271 S.W. 610.

Appellant acknowledges his own testimony does not raise the issue, but contends it was raised by other sources and from all the evidence that appellant was entitled to a charge on justifiable homicide to prevent a robbery of another as well as to prevent unlawful violence on another. He contends that one justification for homicide may, even in an instant, supersede another and the trial court must give proper instructions on any defensive theory raised

by the evidence, regardless of its source and even if it is "out of harmony with that advanced by the appellant in his own testimony." Knight v. State, 84 Tex.Cr.R. 395, 207 S.W. 315. He claims it would be difficult for a jury to believe he was acting to prevent unlawful violence to another when the evidence shows he shot the deceased in the back of the head while the deceased was fleeing.

The State contends that in Knight v. State, supra; Medina v. State, 87 Tex.Cr. R. 81, 219 S.W. 453; Carson v. State, 89 Tex.Cr.R. 342, 230 S.W. 997; Hays v. State, 90 Tex.Cr.R. 192, 236 S.W. 463 and Nami v. State, 97 Tex.Cr.R. 522, 263 S.W. 595, the accused was aware of the fact or facts which gave rise to the defensive theory on which an instruction was sought and denied even though he attempted to justify his acts on a different theory; and the testimony of the appellant affirmatively established the contrary in the instant case.

In Stephens v. State, 65 Tex.Cr.R. 643, 145 S.W. 907, it was held that the acts of the victim are to be viewed as they appeared to the defendant at the time of the killing in determining whether it was justified.

The appellant himself testified that the deceased "didn't snatch at her purse" and this was corroborated by Miss Urbano who related the deceased "did not grab for my purse."

Appellant calls attention to the testimony of Gomez who stated the deceased "was trying to get her purse."

---

1. Such charge to which appellant addressed no objection reads as follows:

"You are instructed that under our law homicide is justifiable when done by one person to protect another person from unlawful violence, as it reasonably appears to the defendant as viewed from his standpoint at the time, in the same manner and to the same extent as he would be justified if acting in his own defense.

"So, if you believe from the evidence beyond a reasonable doubt that the defendant did shoot and thereby kill the deceased, but you further find from the evidence that at the time of the killing it reasonably appeared to the defendant, viewed from his standpoint alone at the time, that the deceased was making an unlawful attack upon Amparo Urbano, or about to attack the said Amparo Urbano, and it reasonably appeared to the defendant that the said Amparo Urbano was in danger of death or serious bodily injury at the hands of the deceased, then the defendant was justified in killing the deceased, and if you find the facts so to be, or if you have a reasonable doubt thereof, you will acquit the defendant."

It has been held, though, that snatching money from another's hands does not constitute robbery. Johnson v. State, 35 Tex. Cr.R. 140, 32 S.W. 537; Jarrott v. State, 96 Tex.Cr.R. 239, 257 S.W. 256; Polk v. State, 157 Tex.Cr.R. 75, 246 S.W.2d 879. And mere suspicion that a robbery was being committed is insufficient to require the charge demanded. Campbell v. State, 139 Tex.Cr.R. 379, 138 S.W.2d 1091.

We find no evidence in the record to show that a robbery was attempted or that the appellant shot the deceased because of any robbery. We cannot conclude the court erred in overruling appellant's written objection to the charge. The charge given adequately protected appellant's rights. See also Article 36.19, Vernon's Ann.C.C.P.

The judgment is affirmed.