BERRY, Judge.
 

 Appellant was convicted in the District Court of Roberts County of the offense of manslaughter growing out of the killing of Nash Tracy, and his punishment assessed at confinement in the state penitentiary for a term of five years.
 

 The record shows that the actual killing was done by Joe Sweet, and it was the theory of the State that appellant was a principal in said homicide.
 

 The proper understanding of the questions hereinafter discussed necessitates a brief recital of the facts on which the state relied to
 
 *633
 
 convict the appellant as a principal. Appellant resided on a farm in Wheeler County, and in the same vicinity also lived Joe Sweet and the deceased. The killing occurred on Saturday, November 11, 1922, at about two o’clock P. M., and on Thursday prior thereto the testimony shows that the deceased, a man whose age is variously stated, as being from 63 to 72 years, made a criminal assault on Alberta Sweet, the nine-year-old daughter of Joe Sweet, while she was on her way home from the district school.
 

 Boone Robbins testified for the State that at about 1:30 o’clock in the afternoon of the day of the homicide appellant came to the home of the deceased, and after a few desultory words told deceased to “Come on let’s go get those cows,” and that appellant and deceased rode off together, appellant having a shot-gun and deceased being unarmed, both going in an easterly direction. This witness disposes to nothing unusual in the language or demeanor of appellant or deceased at the time, and when they left together he did not see them again.
 

 Gordie Jones testified for the State to substantially the same facts as those detailed by the witness Robbins, and in addition thereto states more fully the conversation concerning the cows, the substance of which was that appellant claimed that certain cows belonging to deceased were depredating on appellant’s field, and that he and deceased left together, ostensibly for the purpose of looking after the offending cows. The witness further testified that in a little while after the parties left his presence appellant came back and reported that “Joe Sweet has killed old Nash Tracy.” Immediately thereafter Joe Sweet come to where witness was working. Forthwith the witness his father W. D. Jones, Joe Sweet and appellant went about 400 yards east from deceased’s residence and found deceased fatally wounded as a result of a discharge from a shot-gun. 'While at the scene where deceased lay the witness testified that as appellant rode up to or passed by deceased he looked back at the witness and his companions saying: “Whole damn side of his face shot off,” and gave a “Ha-ha” and went on. This witness further testified to hearing appellant express pleasure at deceased’s death, giving as a reason that he didn’t want such a man in the community where his girls were. He also testified that appellant did not offer to help in taking care of deceased after he was shot.
 

 W. D. Jones testified to practically the same facts as those detailed by his son, Cordie Jones. He testified to no new facts and was noncommittal as to whether or not appellant helped to put deceased in the wagon to remove him home after he was shot.
 

 Silas Childress, the only eyewitness to the homicide, testified that he went with Joe Sweet on horseback from the home of Joe Sweet to
 
 *634
 
 the scene of the killing. That Sweet procured a gun from a neighbor’s, house on the way and when about' 300 or 400 yards from deceased’s house they met deceased and appellant, who were also traveling on horseback. That when the four met witness and Sweet were going west and appellant and deceased were traveling east. That at the time of the shooting all parties were off of their horses. That Sweet threw his gun on deceased, commanding him to threw up his hands, asked him about assaulting his little girl, and when deceased admitted that on Thursday before he had taken the little girl off of her horse on her way from school and had hugged and kissed her, Joe Sweet shot the deceased. That at the time of the shooting appellant was holding his gun towards deceased and was standing on the ground holding his and deceased’s horses. The witness variously stated the appellant’s way of handling his gun by saying he had it “pointed at” “drawn on” and “pointed toward” deceased at the time Sweet shot him. On cross-examination this witness says: “I do not think Bryant was making any effort to shoot the Mexican and he was right there and saw the whole transaction,”
 

 Susie Lee Bryant, appellant’s eighteen year old daughter, called by the state, testified that on the morning of the homicide between 11 and 12 o’clock Joe Sweet came to her father’s house, held a secret conversation with her father, and they rode off together. That her father shortly came back, got his shotgun and went in the direction of the home of deceased. Witness did not see her father again until next morning when he scolded her for telling Mr. Marrs, a neighbor, that Joe Sweet was at their home the day before. She also testified that her father told her “If we told about seeing Joe Sweet there it would send our poor old dad to the pen.”
 

 Helen Bryant, appellant’s 16 year old daughter, gave practically the same testimony as that of her older sister. One other witness testified to appellant’s having expressed his pleasure at the death of deceased.
 

 The foregoing is a rather thoro synopsis of the incriminating testimony on which the state relied for a conviction. When the case was called for trial appellant presented his first application for a continuance on account of the absence, among others, of the witness Mrs. Joe Sweet.' By this witness appellant alleged, among other things in his motion, that he expected to prove that the witness’ husband, Joe Sweet, did not see nor communicate with appellant from the time her husband learned of the assault of deceased on his little girl until they met at the scene of the killing, but that Sweet was at home with her from 10:30 or 11 o ’clock until 1 o ’clock P. M. of that day. The motion having been overruled appellant excepted and brings forward in his motion for new trial this action of the court
 
 *635
 
 as his first assignment and properly attaches to the motion for new trial the affidavit of the absent witness in which she avers her willingness to testify fully and in detail to the matters which appellant claims she would testify in his motion for continuance, specifically averring in her affidavit her willingness to testify to the fact that her husband, Joe Sweet, did not see or communicate with appellant from 11 o’clock A. M. until 1 o’clock P. M. on the day of the homicide.
 

 The motion for a continuance conformed in all essential particulars to the terms of the statute. It was appellant’s first application for a continuance. The diligence used was unassailable. That the witness was ill and unable to attend court the record clearly establishes. That her testimony was material we think a careful perusal of the facts stated above will clearly demonstrate. Before this appellant could be convicted it was essential for the state to show' that he acted together with Joe Sweet, the admitted slayer. This burden the state sought to discharge by circumstances such as his accompanying deceased to the scene of the homicide, his expression of pleasure at the death of the deceased, his presence, armed, at the scene of the killing, and what is perhaps the most damaging of all the testimony, by showing that appellant and Joe Sweet were in conversation shortly prior to the killing and that immediately after said conversation appellant armed himself and went in the direction of the home of the deceased. The testimony last recounted was elicited by the state from the daughters of the appellant. The absent witness would have given testimony which, if believed by the jury, would have contradicted and for aught we know might have discredited the testimony of appellant’s daughters to the effect that he and his alleged co-principal conferred together between 11 and 12 o’clock immediately prior to the homicide. This would have been in contradiction of testimony of the state on a vital and material issue in the case. The application being in proper form to meet the requirements of the statute and the testimony being sufficient to constitute a material contradiction of that offered by the state, it is our opinion that appellant’s motion for new trial shordd have been granted because of the error in overruling appellant’s first application for a continuance. Por collation of authorities see Sec. 335, Branch’s Ann. P. C.
 

 Appellant complains at that portion of paragraph 8 of the court’s charge to the jury wherein the jury is told after being instructed under certain circumstances to acquit the defendant of murder, to then consider whether defendant is “guilty of manslaughter
 
 or was justified in ialdng ihe life of Nash Tracy.”
 

 Appellant offered no testimony and made no contention to the effect that the killing was justifiable homicide, but his theory was
 
 *636
 
 that he was not a principal and had no part in the homicide. The record is silent as to any evidence showing a legal justification for the killing, and no other reference was made in the charge to justifiable homicide. Under this condition of the record on another trial of the case if the issue of justifiable homicide is note raised then we think the portion of the charge complained of should be eliminated. Mattison v. State, 54 Tex. Cr. R. 514.
 

 Complaint is also made and properly embraced in the record with reference to certain testimony elicited and sought to be elicited by the district attorney from the witness Susie Lee Bryant. After appellant’s daughter Susie Lee Bryant as a witness for the State had given testimony against the appellant the district attorney asked the witness: “Did your father ever curse you? to which she answered. “Yes sir.” Again he asked her, “State whether or not your father ever cursed and abused you.” We fail to perceive the relevancy of this testimony. Its probable harmful effect on the appellant is manifest. His daughter had already given very damaging testimony against him on a matter that was entirely relevant to the ease. To follow this by proof of extraneous matter bearing on his alleged mistreatment of her could serve no other purpose than to create a tendency to . inflame the minds of the jury against the appellant. We refuse to give our sanction to this sort of procedure. The court very properly instructed the jury to disregard these questions and the answers but we are not satisfied that the harmful effect probably produced thereby was destroyed by such instructions. In view of the reversal of this case on another matter it is perhaps sufficient to suggest that on another trial the state should limit its inquiries to matters pertinent to the issues involved. McIntosh v. State, 213 S. W., 659; Bullington v. State, 180 S. W., 679.
 

 It is our opinion that because of the error of the court in overruling defendant’s first application for continuance the case should be reversed and the cause remanded.
 

 Reversed and remanded.
 

 The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.