## WILL HODGE V. THE STATE.

No. 16473.   Delivered January 24, 1934.
Reported in 67 S. W. (2d) 616.

The opinion states the case.

*Carlos B. Masterson,* of Angleton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, twenty years in the penitentiary.

C was shot and killed about ten o'clock on the night of May 7. It was shown by the testimony of a number of witnesses that he had on his person,—and in a bill fold, in bills,—nearly two hundred dollars in money during that day and night. After he was killed search of his body, which lay on its left side, disclosed the bill fold referred to in his right hip pocket, being the pocket exposed, but the money was gone, except one five dollar bill. C had been rather recklessly displaying his money. At the time he was shot he was dressed in a light shirt, dark pants, and a union undersuit. Witnesses who knew deceased said that if he owned a pistol they did not know it, and of the various witnesses, who were with him that day, none said they saw any pistol in his possession, or indication that he had one. Bertha Williams, apparently the first witness who approached the body after the homicide, said she saw a flashlight lying by the body, near its back,—but saw no pistol about said body. Officer Russell and Justice Hardeman, being notified, went to the body.

Near same were some matches, a package of cigarettes, and at something more than arm's length from the body a sixshooter lay cocked, loaded all around, the muzzle being pointed toward the body. Investigation disclosed seven entrance wounds in the body, and that both lead and steel bullets were in same. A 38 caliber lead bullet was found in the right chest and two 32 caliber steel bullets were found, one in the left chest and one in the abdomen. Three bullets had pierced the heart, two coming from the front and one from the side. No witness testified to any ill-feeling between C and either appellant or his brother Sim.

On the trial the defensive theory was that appellant's brother Sim did all the shooting, and that appellant was not present. Appellant swore as a witness in his own behalf that he was not there, but was in Bivins' cafe at the time, and introduced witness Hall who swore that he was talking to appellant in said cafe when they heard the shooting. Appellant also drew from a state witness, on cross-examination but without objection, that when he arrested Sim about four o'clock A. M. the night of the shooting, Sim told him that he did the shooting himself, and when witness asked why he did it, Sim stated "Because Tom tried to shoot me." Deceased was referred to by some of the witnesses as Tom.

This brings us to the testimony of Harris, the only witness who claimed to have been present when the shooting took place. It is worth noting that this witness said he was a friend of Sim Hodge and appellant, had gone to school with them, and was raised with them,—and also the fact that he was arrested on that night and charged with this murder along with them. Harris was a state witness, and swore than he was "walking down there" and met Sim Hodge, who asked him for a cigarette, which he gave him, apparently handing him a package. He said about this time C walked up and asked him for a cigarette, and he told Sim to give C one, and he was not sure whether Sim took one out of the package or handed C the whole package, but at this juncture C kind of stepped back and "moves his arm (indicating) and when Tom steps back, Sim starts to shooting, and I turns to run, and Will was behind me, and when I wheeled and run, why I run into Buddy Morant. Will Hodge was behind me at the time the shooting took place; I don't know what he was doing, but when Sim made his shot, I heard a shot behind me, and Will Hodge was right behind me; I didn't see any one else there but Will; Buddy Morant was more over to the side." On cross-examination he said that when he told Sim to give C a cigarette, C moved back and moved his arm

back this way (indicating) toward his hip pocket. On re-direct he said he did not remember that any word passed between Sim and deceased before the shots were fired; that Sim was in front of him, deceased off to the right, and appellant was behind him when the shooting took place.

We have set this testimony out at some length in view of appellant's exception to the court's charge for its failure to instruct the jury as to the law of self-defense, this being the language of the exception. As we view the facts, there was no need for a charge on the law of self-defense. The statement of Sim Hodge put in testimony without objection, in the cross-examination of officer Russell, was: "I thought C was going to shoot me." The other facts show without dispute that if C made any motion toward his pocket, he was then facing Sim, and that either his side or his back was toward appellant, who was behind Harris, and clearly in no sort of real or apparent danger from C. Two lines of authorities oppose appellant's right to a charge on self-defense. The following cases hold that when the evidence only raises the issue of defense of another, the trial court would not err in declining to charge on self-defense. McGrath v. State, 35 Texas Crim. Rep., 425; Garza v. State, 48 Texas Crim. Rep., 383; Early v. State, 51 Texas Crim. Rep., 392; Monroe v. State, 81 S. W., 727. Under the facts there would seem no dispute about the proposition that if appellant, from any kind of deduction from the state's testimony, could be deemed entitled to a charge as against any act of deceased on any sort of defense, it would only have been a charge in defense of his brother. The other line of cases referred to hold that when the sole defense is alibi, a charge on self-defense might impinge on the defense relied on and might constitute reversible error. Yardley v. State, 50 Texas Crim. Rep., 646-7; Anderson v. State, 34 Texas Crim. Rep., 546; Cooper v. State, 98 Texas Crim. Rep., 446; Bryant v. State, 271 S. W., 610; Early v. State, 51 Texas Crim. Rep., 388. Of course in the instant case the giving of such charge on self-defense in response to appellant's exception, would not have been reversible error, but we deem it not called for by the facts.

Appellant also has an exception to the refusal of the court to continue the case upon his application. The record fails to disclose diligence. It is set up that appellant got no subpoena for the absent witness because the state had caused one to be issued. There is no showing in the application of what became of the subpoena, if issued, whether it was ever delivered to the sheriff, or when it was returned. No subpoena is attached to the application. As further reason for sustaining the action

of the court in refusing the continuance, it is shown that when this was made a ground of the motion for new trial, the state controverted the motion and attached to its controversy an affidavit made by the absent witness in which she set up that she would not give the testimony expected of her, and as further substantiating this, said controversy of the motion for new trial was accompanied by a certified copy of the testimony of said witness given upon the trial of appellant's brother Sim Hodge. We also notice that the application for continuance failed to allege the residence of the witness, which is uniformly held necessary.

The only other complaint is that the testimony is not sufficient. We think it was sufficient.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*