EARL THOMAS BREWER V. THE STATE.

No. 22315. Delivered December 16, 1942.
Rehearing Denied February 3, 1943.

GRAVES, Judge, dissenting.

*Rogers & Spurlock*, of Fort Worth, for appellant.

*Marvin H. Brown, Jr.*, Criminal District Attorney, and *M. Hendricks Brown*, First Assistant Criminal District Attorney, both of Fort Worth, and *Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for murder. This is the second appeal of this case, the defendant having been given ninety-nine years on his first trial which judgment and verdict was reversed because of an error in the court's charge. The facts as set out in the court's opinion reported in 157 S. W. (2d) 388 clearly present a brief resume of the facts proven at the second trial. As stated in our former opinion "The State's case showed an unprovoked and unjustified killing." The defendant was given thirteen years by the second jury on the trial of these facts and he now presents his appeal to this court on complained of errors alleged to have occurred in such second trial. Only three propositions covering five of his nine bills of exception and one of his approximately one hundred exceptions to the court's charge are briefed and presented to this court.

Bill of exception number one relates to the court's action in sustaining the State's challenge to a venireman because he entertained conscientious scruples in regard to the infliction of the punishment of death for crime. There is incorporated in the bill by order of the court the question and answer investigation of the proposed juror, including his examination by the district attorney and by counsel for appellant; also by the court. It would be useless to set out at length such examination. The bill reflects a patient effort on the part of the court to ascertain the mind of the venireman towards the infliction of the death penalty. We conclude that the court was correct in holding that the proposed juror had conscientious scruples against such punishment. If the venireman's examination disclosed that he himself was uncertain about the state of his mind upon the question the opinion in Sawyer v. State, 39 Tex. Cr. R. 557, throws light upon the proper course to be pursued by the trial judge.

It is claimed by counsel for appellant that in the bill the court certified to the qualification of the juror, hence certified error in sustaining the State's challenge. Such position is based on the recital in the bill that among other veniremen "was one F. J. Dreer who was in all things qualified by law to

serve as a juror on the trial in this cause." Immediately following the recital is set out that: "During his voir dire examination * * * the following proceedings were had," and here follows the long question and answer examination heretofore adverted to. Art. 612 C. C. P. sets forth certain questions to be propounded to prospective jurors by the court in "testing" their qualifications. If the questions are answered in the affirmative "the court shall hold him to be a qualified juror until the contrary be shown by further examination or other proof." The recital upon which certification of error is predicated is nothing more, we take it, than the court saying that he held the juror qualified upon the preliminary examination provided for in Art. 612 C. C. P., and was passing him to counsel for acceptance on further examination.

Bills of exception numbers 4, seven, eight and nine in various forms relate to the same complaint, viz: that over appellant's objection the State was permitted to prove that appellant had whipped his daughter because she was going with deceased. This fact was first developed from the witness Gatlin who detailed a conversation with appellant in which the latter told witness that his daughter had run away with deceased, and asked witness "What would you do when you find him? Would you just leave him lying where you found him?" It was in this conversation that appellant told witness that he had whipped his daughter for keeping company with deceased. Upon cross examination of the daughter the State elicited from her that appellant had objected to her going with deceased and had whipped her for so doing. Appellant objected to the development of this fact for various reasons, among them being that same was irrelevant and prejudicial, and was evidence of an extraneous offense for which no complaint had ever been filed against appellant, and that such evidence was not material to the matters in issue, and had no connection therewith, and was evidence of abuse of appellant's daughter. In reply to appellant's contention the State cites Art. 1257a P. C. which as here applicable reads as follows: "In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed."

The evidence leaves no doubt of appellant's serious objection to deceased paying attention to his daughter, appellant basing such objection on statements claimed to have been made to appellant by deceased regarding his improper relations with other girls. So serious were these objections that appellant's daughter had been compelled to return some gift to her from deceased and she had been whipped for permitting deceased's attention. There was no evidence introduced as to the extent of such whipping, nor as to how many times she had been whipped; indeed, upon inquiry by the State to the daughter as to how many times appellant had so whipped her, the court sustained appellant's objection. The number nor details of such corrections were not developed. If the evidence had simply shown that appellant had at some time whipped his daughter independent of any connection of deceased therewith, or cause thereof, appellant's objection would have found support in the cases cited to sustain his contention. Said authorities are Singletary v. State, 100 Tex. Cr. R. 399, 273 S. W. 593; Bryant v. State, 99 Tex. Cr. R. 600, 271 S. W. 610, and Browning v. State, 96 Tex. Cr. R. 103, 255 S. W. 1113. In none of these cases does the evidence held to have been improperly admitted throw any light upon the issues involved in such cases, but simply show acts of violence and abuse on accused's part, having no connection with the matter under investigation. Not so here. There is no intimation that appellant whipped his daughter for any reason other than because she continued to associate with deceased. Proof of that incident, along with numerous threats towards deceased, were relevant facts showing the previous relationship between deceased and appellant, and the condition of appellant's mind, and his feelings towards deceased at the time of the killing.

It is appellant's further position that the court should have instructed the jury that violence used by appellant upon the person of his daughter in the exercise of moderate restraint or correction was not unlawful. Appellant raises the question by an objection to the court's charge as not embracing therein such an instruction. Appellant bases his proposition on Subdivision 1 of Art. 1142 P. C. If appellant were being prosecuted for an assault upon his fifteen year old daughter such an instruction under certain facts would be pertinent. Proof of the whipping went into this case to show appellant's feelings towards deceased. There is no intimation that they were immoderate.

Evidence also went into the case of threats by appellant towards deceased, for the same purpose of showing feeling and malice. Art. 1265 P. C. provides that whoever seriously threatens to take the life of a human being or to inflict. upon him serious bodily injury shall be guilty of an offense, but Art. 1266 P. C. provides that to constitute the offense the threat must be seriously made, not a mere idle threat with no intention of executing it. Surely, it would not be contended that because threats were proven the court should have charged the limitation found in Art. 1266. It appears that there would be as much basis for such a requested charge as for the one here urged.

The foregoing discussion disposes of all the questions briefed by appellant. Bills of exception numbers two, three, five and six, not urged in brief or in oral argument, have been considered, and are not thought to present error.

The court's charge appears to have instructed the jury upon every possible phase of the case. Objections to the charge cover twenty-five pages of the transcript, and only one objection is urged in appellant's brief or in oral argument. We discover no fault in the charge unless in some particulars it is more favorable to appellant than the law required.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

We have reconsidered the earnest argument made in behalf of a father who felt that he was justified in the slaying of the man who had married his daughter against his will and, as any father must, we sympathize with the plight of one who suffers a disappointment and who felt outraged because of her improvident marriage. However, murder is not his proper remedy.

From the time that the deceased began to go with appellant's daughter, the resentment grew in appellant's mind against the boy and he punished the girl for going with him contrary to the father's wishes. When he realized that they had eloped together, he must have understood their marriage intentions as a natural consequence, for there is nothing in the evidence to

indicate, as urged by counsel, that the appellant reasonably entertained fear that the deceased was unlawfully using the daughter for any other purpose. The outraged father gave vent to his feelings and extended it to threats against the life of the boy. Search was instituted as above described and without a relenting moment, as revealed in the evidence, he carried the feeling to the moment of the tragedy which he had previously expressed at the time he punished the daughter for going with him. It was a feeling of hatred which was submitted to the jury as evidence in the case, upon which they may determine the issue of malice. It simply revealed the origin of his state of mind and the condition which remained in it until the fatal wound was inflicted.

The argument presented in the motion in favor of the bill of exception to the admission of this testimony does not answer the very logical reasoning in the original opinion. We find ourselves unable to add force to that opinion or to agree that additional authorities are necessary to support it. The other matters have been considered and are not believed to call for a reversal of the case.

Appellant's motion for rehearing is overruled.

GRAVES, Judge (dissenting).

My Brethren have agreed to the affirmance of this cause, and to the overruling of the motion for a rehearing. I am not in accord with their entire views on this matter, especially as shown by their treatment of bills Nos. 4, 7, 8 and 9.

The facts show that appellant and his wife were the parents of five boys and one girl; that the father was especially fond of and proud of his daughter, Virginia Ruth, who was born on March 9, 1926, and at the time of this unfortunate occurrence she was fourteen years old, and an honor student in her school. This young girl had not been allowed to keep company with boys, but the father and mother had learned that the deceased, Glen Cox, nineteen years of age, had been paying some attention to the daughter. This was objectionable upon the part of the girl's parents. The father, appellant, had an interview with the deceased, and told him that he objected to such attentions being paid to his daughter. Appellant testified that from conversations with the deceased, relative to his conduct with girls, he did not think he was the right kind of boy to associate with

his daughter. He had a conversation with Glen before Christmas, 1940, and "told him he was just too old a man to go with that young a girl. * * * He promised not to go with her any more." Afterwards the daughter, Virginia Ruth, appears at her home with a watch, which was a present from the deceased. Her parents directed her to return the watch, and her mother testified: "I told her it was improper for a boy to give a girl a watch when he really had never had any dates with her, or gone with her that we knew of. We didn't think he had. I told her to return the watch to him. About a week after that I learned of her having dates with him, and I talked to her again." It seems that Virginia Ruth again became possessed of the watch, and the mother herself took the watch back to the deceased, and she and her husband "talked to deceased about his relationship with Virginia, and he said if we felt that way about it he guessed it would have to be that way." Evidently upon the daughter's continued association with the deceased the father punished her by whipping her. On Monday, January 6, 1940, appellant, at about 12 or 1 o'clock that day, found out that his daughter had disappeared from school in company with the deceased. He immediately began to hunt for them. He phoned to surrounding county seats, and enlisted the services of the sheriff and friends trying to locate the couple. He knew that if they were married they would have to procure a license from some county seat, which license could only be secured by a showing of the daughter's age to be eighteen. He was unable to locate them; he neither slept nor ate, so his wife said, but drove from point to point in his fruitless search, and often visited the sheriff's office in his home county endeavoring to have him find his lost girl. The sheriff phoned adjoining counties, even phoning into Oklahoma, but was unable to locate the missing couple. Appellant and his wife finally received a postal card from his daughter on Saturday, after she had been gone nearly a week; the card was read to him by his wife; it said: "Hope every one is fine. We are O.K. and having a swell time. Sorry we had to do like we did, but you know what caused it. Don't know when we will be home, but won't be at Ector for a few days. Love. Glen and Virginia." Upon the reading of this card to appellant by his wife, he said: "I don't believe they are married," so the wife testified.

Appellant's bills Nos. 4, 7, 8 and 9 all relate to the proof upon the part of the State that the father punished his daughter for going with the deceased. Bill No. 4 says that the fact of

such punishment was proven by the State in its evidence in chief and before the appellant had introduced any testimony, and the qualification thereto shows that the fact that the father told the daughter that Glen Cox was no good; and that he objected to him going with his fourteen year old child, was shown prior to the proof of the whipping.

Bill No. 7 relates to Virginia Ruth, upon her cross-examination, being called upon to testify to the fact that her father had whipped her for going with Glen Cox.

Appellant objected and excepted to the trial court's charge also in that same did not embody an instruction to the jury that a parent had the right of moderate restraint or correction over their child, and violence used in such a manner was lawful, as shown in Art. 1142, P. C. subdiv. 1. Thus the issue became drawn.

The parent's chastisement of this fourteen year old girl because she was disobeying them and keeping company with this nineteen year old young man was utilized for the purpose of showing animus and malice towards such man, and yet the law, man's as well as God's, gave them that power, and surely imposed upon them the duty of watching over and guiding the conduct of this young girl, even to the extent of punishing her for a failure to obey them. I do not think the fact of her punishment was available to the State for any purpose. It would be a strange doctrine that would take away from the parent the privilege and the duty of guiding the footsteps and guarding the conduct of his young daughter, especially in her association with a man such as appellant knew this one to be. To take the evidence of a disapproval of a clandestine suitor for this young girl's attentions and utilize the same as an evidence of hatred for and malice against the suitor, carried to its climax, would cause the parent to be dumb in the presence of his daughter, and even take from him the power to offer an objection to her receiving the attentions of the veriest libertine.

That this appellant was suffering and tortured during the near week of his daughter's disappearance is not only shown but can be gathered from his conduct in endeavoring to find her and to take her back home. She could not even consent either to yield her body to the deceased, nor could she marry

him without her parents' consent. See Art. 4605, R. C. S. She was but a few months removed from the ban of the statute, Art. 4603, R. C. S., that would not allow her to marry at all until she became of the age of fourteen years.

If this appellant is guilty of any offense, the undisputed facts, so the writer thinks, show him guilty of no higher offense than murder without malice, and I can not agree that the evidence of his punishment to his daughter because of her disobedience was admissible herein for any purpose, and surely, if admitted, Art. 1142, sub. 1, P. C., should have been given, allowing a moderate punishment by a parent upon a child. Appellant's objection, as well as his wife's to the attentions being paid by the deceased to the daughter, was amply shown by both parents, as well as by Virginia Ruth's testimony, and his punishment of the girl could but have served to aggravate the punishment meted out to appellant. If guilty at all, I think the testimony rises no higher than murder without malice. I think this cause should have been reversed because of the admission repeatedly of the father's punishment of his daughter.

I do not think that the exercise of moderate restraint by a parent over a child could evidence a heart regardless of social duty and fatally bent on mischief, nor that the vigorous objection of the parent of a fourteen year old girl being shown attention by a nineteen year old man whose character was objectionable to the parent is any evidence of hatred upon the part of the parent.

I herewith respectfully enter my dissent in this affirmance and the overruling of this motion.