589 S.E.2d 1

The STATE, Respondent,

v.

Therl Avery TAYLOR, Petitioner.

No. 25637.

Supreme Court of South Carolina.

Heard Nov. 16, 2002.

Refiled June 12, 2003.

228

Katherine Carruth Link and South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Thomas E. Pope, of the Sixteenth Judicial Circuit, for respondent.

Chief Justice TOAL:

Petitioner, Theryl Avery Taylor ("Petitioner"), petitioned this Court to review the Court of Appeals' decision affirming his conviction for murder on grounds that the trial court erred

in charging mutual combat to the jury. This Court granted certiorari and issued an opinion reversing Petitioner's murder conviction. Subsequently, Petitioner filed a Petition for Rehearing, arguing that this Court must also reverse his conviction for Possession of a Firearm or Knife during Commission of a Violent Crime pursuant to S.C.Code Ann. § 16–23–490 (2003). This Court granted the Petition for Rehearing and issues the following opinion reversing both of Petitioner's convictions.

## FACTUAL / PROCEDURAL BACKGROUND

On December 16, 1998, Petitioner hired Robert Murphy ("Murphy"), fourteen year-old Shane Wallace, and Shane's teenaged friend Dean, to help him in his tree service business. After working that day, Petitioner and Murphy drove the two young men to the home of Shane's mother, Angela Wallace, an acquaintance of both Murphy and Petitioner. When they arrived at Angela's house, Petitioner and Murphy went inside and joined Angela, Myranda Stillinger, and Kevin Carter who had been drinking heavily all day. Shane, Dean, and Shane's sister, Chrystal, played outside.

While the testimony varied widely regarding many of the relevant facts, all witnesses agreed that, at some point in the evening, Kevin and Myranda began arguing. Petitioner testified that Kevin forcefully pushed Myranda into a counter. All parties agreed that Petitioner intervened, either physically or verbally, to stop the apparently escalating argument between Kevin and Myranda. Kevin and Petitioner then engaged in a violent, physical confrontation; however, the witnesses disagree about who started the fight and about its intensity at various points.

At trial, Murphy testified that the fight began when Petitioner "sucker-punched" Kevin. Murphy reported, "[a]nd that's when [Petitioner] said, you know, I'm not afraid of you, big man. And [Kevin] said, I'm not afraid of you either. And that's when [Petitioner] said, we're going to hell or jail. And all of sudden, he just hauled off and punched [Kevin] in the head while [Kevin] was sitting down." [1]

---

1. Murphy neglected to report any of these facts in the signed statement he gave to the police on the night Kevin was killed, including his later contention that Petitioner had started the fight.

230

Petitioner, on the other hand, testified that Kevin threw the first punch, and that he tried to withdraw from the fight, but that Kevin would not release him and continued to beat him. Other witnesses asserted that Kevin, not Petitioner, attempted to quit fighting. All witnesses agree that Angela insisted the two take the fight outside, and that they continued their struggle on the porch of the trailer and into the front yard.

At some point thereafter, Petitioner drew a buck knife from his pocket, and began stabbing Kevin. The autopsy report disclosed that Kevin was stabbed fifteen times and died of a stab wound to the heart. The autopsy reported Kevin was six feet two inches tall and weighed approximately 270 pounds at the time of his death. A physical examination of Petitioner a few days after the fight revealed Petitioner had undergone abdominal surgery in the weeks preceding this incident after a car accident, but indicated no new cuts or bruises. Petitioner was substantially smaller than Kevin.

At trial, Petitioner admitted he stabbed Kevin, but alleged he did so in self-defense. The trial judge charged the jury on self-defense and, over Petitioner's objection, on mutual combat, as follows:

We also have the law in this state regarding what is sometimes referred to as mutual combat. This premise is in the law where two persons are mutually engaged in combat and one kills the other. And at the time of the killing it being maliciously done as murder.

If it be done in the sudden heat of passion upon sufficient provocation or without premeditation, it would be manslaughter.

One who provokes or initiates an assault and not [sic] escape from the liability may find in self-defense a defense to a prosecution arising with respect to injury or death of their adversary.

And where a person voluntarily participates in mutual combat for purposes other than protection you cannot justify or excuse the killing of the adversary in the course of such conduct on the ground of self-defense, regardless of what extremity or even peril he may be introduced to in the process of the combat. Unless in either event before the homicide is committed the person withdraws and does in

good faith decline from the conflict and either by word or by act makes that known to their adversary.

Then if the adversary pursues them the aggressor may upon the belief that they are in danger injure or kill the adversary. Communication by one to an adversary or attempt to withdraw may be explicit or verbal by use of words or may be implicit by conduct, such as retiring or attempting to retire from the scene and abandoning conflict.

The jury convicted Petitioner of murder and possession of a weapon during commission of a violent crime. The trial judge sentenced Petitioner to thirty-six years for murder and five years, concurrent, for the weapons charge. The Court of Appeals affirmed Petitioner's convictions. *The State v. Therl Avery Taylor*, Op. No. 2000–UP–484 (S.C. Ct.App., filed June 26, 2000). This Court granted certiorari to review the following issue:

Did the trial court err in delivering a charge on mutual combat to the jury, and, if so, was Petitioner prejudiced by the charge?

### LAW/ANALYSIS

█ Petitioner argues that the Court of Appeals erred in affirming the trial court's jury charge on mutual combat. We agree.

█ In general, the trial judge is required to charge only the current and correct law of South Carolina, *Cohens v. Atkins*, 333 S.C. 345, 509 S.E.2d 286 (Ct.App.1998), and the law to be charged to the jury is determined by the evidence at trial. *State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993). To warrant reversal, a trial judge's charge must be both erroneous and prejudicial. *Ellison v. Parts Distributors, Inc.*, 302 S.C. 299, 395 S.E.2d 740 (Ct.App.1990).

█ The doctrine of mutual combat has existed in South Carolina since at least 1843, but has fallen out of common use in recent years. The case law does establish that there must be "mutual intent and willingness to fight" to constitute mutual combat. *State v. Graham*, 260 S.C. 449, 450, 196 S.E.2d 495, 495 (1973). Mutual intent is "manifested by the acts and conduct of the parties and the circumstances attending and

leading up to the combat." *Id.* Whether or not mutual combat exists is significant because "the plea of self-defense is not available to one who kills another in mutual combat." *Id.* (citing *State v. Jones,* 113 S.C. 134, 101 S.E. 647 (1919)). In order to claim self-defense, the defendant "must be without fault in bringing on the difficulty." *State v. Davis,* 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984). Because mutual combat requires mutual intent and willingness to fight, if a defendant is found to have been involved in mutual combat, the "no fault" element of self-defense cannot be established.

If the defendant is engaged in mutual combat, self-defense is unavailable unless the defendant withdraws from the conflict before the killing occurs.[2] A finding that a defendant was engaged in mutual combat does not preclude the jury from convicting the defendant of manslaughter as opposed to murder. "Where two persons mutually engage in combat, and one kills another, and at the time of the killing it be maliciously done, it is murder; if it be done in sudden heat and passion upon sufficient provocation without premeditation or malice, it would be manslaughter." *State v. Andrews,* 73 S.C. 257, 53 S.E. 423 (1906).

The doctrine has most often been applied in situations where the defendant and decedent bear a grudge against each other before the fight in which one of them is killed occurs. *State v. Porter,* 269 S.C. 618, 239 S.E.2d 641 (1977) (holding mutual combat precluded a plea of self-defense where Appellant returned to injured party's property at least twice with a gun despite prior verbal warnings not to return and accompanying gunshots); *Graham,* 260 S.C. at 451, 196 S.E.2d at 496 (finding mutual combat charge proper where appellant and deceased had quarreled prior to the killing, each knew that the other was armed with a pistol, and each fired his gun at

**2.** In *State v. Graham,* the Court quoted 40 C.J.S. Homicide § 122 for an explanation of the basic principles of mutual combat: " 'Where a person voluntarily participates in ... mutual combat for purposes other than protection, he cannot justify or excuse the killing of his adversary in the course of such conflict on the ground of self-defense, regardless of what extremity or imminent peril he may be reduced to in the progress of the combat, unless, before the homicide is committed, he endeavors in good faith to decline further conflict, and either by word or act, makes that fact known to his adversary, ...' " 260 S.C. at 451, 196 S.E.2d at 495–96.

the other); *State v. Mathis,* 174 S.C. 344, 177 S.E. 318 (1934) (finding mutual combat charge proper based on testimony that appellant and deceased were on the lookout for each other, that each was armed in anticipation of meeting the other, and that each drew and fired his pistol at the other).[3]

Although South Carolina has not explicitly required that the fight arise out of a pre-existing dispute, other states have made this prerequisite to mutual combat explicit. Texas and Colorado adhere to the rule that an "antecedent agreement to fight" must exist for the court to charge mutual combat. *Eckhardt v. People,* 126 Colo. 18, 247 P.2d 673 (1952); *People v. Cuevas,* 740 P.2d 25 (Colo.App.1987); *Lujan v. State,* 430 S.W.2d 513, 514 (Tex.Crim.App.1968); *Carson v. State,* 89 Tex.Crim. 342, 230 S.W. 997 (1921).

Georgia has limited the application of mutual combat in another way by holding that mutual combat arises only when the parties are armed with deadly weapons, and that mutual combat does not arise from "a mere fist fight or scuffle." *Flowers v. State,* 146 Ga.App. 692, 247 S.E.2d 217, 218 (1978); *Grant v. State,* 120 Ga.App. 244, 170 S.E.2d 55, 56 (1969). In both *Flowers* and *Grant,* the defendant admitted to killing the decedent, but claimed self-defense. In both cases, the disputes that ended in death began as fist fights, and so the court found the mutual combat charge erroneous. Significantly, the court found that commingling charges on mutual combat and justification was "ipso facto harmful" because "it placed upon the defendant a heavier burden than required" for self-defense. *Grant,* 170 S.E.2d at 56. The court in *Flowers* explained, "[t]o charge on mutual combat, when there is no evidence to support it, effectively cancels the justification defense." 247 S.E.2d at 218.

We believe the restrictions placed on the applicability of mutual combat by the courts in Georgia, Colorado, and Texas are warranted. These limitations are consistent with the

---

**3.** In the only modern South Carolina case to refer to mutual combat in a fist-fight setting, this Court apparently assumed it could apply, but held there was no evidence to support it. *Nauful v. Milligan,* 258 S.C. 139, 187 S.E.2d 511 (1972) (verbal fighting precipitated by injured party's insult to the defendant's children, but injured party never made any accompanying threat of physical violence and never fought back when defendant became physical).

234

South Carolina cases in which the mutual combat charges given were deemed to be proper: *Porter; Graham, and Mathis.* As mentioned, mutual combat acts as a bar to self-defense because it requires mutual agreement to fight on equal terms for purposes other than protection. This is inherently inconsistent with the concept of self-defense, and directly conflicts with the "no fault" finding necessary to establish self-defense. As such, it is only logical that the evidence of agreement to fight be plain, like the evidence of mutual combat present in the *Porter; Graham,* and *Mathis* cases. In holding that mutual combat was properly charged in *Graham,* this Court reasoned as follows:

> *[t]here was ill-will between the parties. They had threatened each other and it is inferable that they had armed themselves to settle their differences at gun point.* Under these circumstances, the apparent willingness of each to engage in an armed encounter with the other, sustained an inference that they were engaged in mutual combat at the time of the killing, and required that the issue be submitted to the jury for determination.

260 S.C. at 452, 196 S.E.2d at 496. (emphasis added).

In this case, the evidence of events leading up to and during the fight between Petitioner and Kevin is sketchy at best. The witnesses, with the exception of the child witnesses, were extremely intoxicated, and arguably exhibited bias toward the decedent. There is no evidence, and the State does not contend, that there was any pre-existing ill-will or dispute between Kevin and the Petitioner, and there is no evidence that Kevin was willing to engage in an *armed* encounter with Petitioner. In their determination of mutual willingness to fight, the South Carolina cases discussed emphasize that *each party knew* the other was armed. Here, there is no indication that Kevin knew Petitioner was armed with a knife, and there was no pre-existing ill-will between the parties. Under these circumstances, there is insufficient evidence of mutual willingness to fight to submit the issue of mutual combat to the jury.

As noted, to warrant reversal, a jury charge must be both erroneous and prejudicial. In our opinion, the mutual combat charge was prejudicial to Petitioner as well as erroneous. *Ellison,* 302 S.C. 299, 395 S.E.2d 740 (Ct.App.1990).

 The mutual combat doctrine is triggered when both parties contribute to the resulting fight. Self-defense, on the other hand, is available only when the defendant is without fault in bringing on the difficulty. *Davis.* Despite this fundamental difference between the doctrines of mutual conflict and self-defense, the Court of Appeals found that charging mutual combat to the jury did not destroy Petitioner's self-defense theory because *Petitioner* still could have proven that he withdrew from the fight in good faith. *Graham,* 260 S.C. at 451, 196 S.E.2d at 496. This finding, however, fails to recognize that requiring Petitioner to prove he withdrew from the fight removes the burden to disprove self-defense from the State, and improperly places it on the Petitioner.

Petitioner admitted to killing Kevin and relied entirely on self-defense at trial. Recently, in *State v. Burkhart,* a majority of this Court found the trial judge's failure to properly charge the jury on self-defense was prejudicial because self-defense versus murder was the sole issue in the case. 350 S.C. 252, 565 S.E.2d 298 (2002). Through *Burkhart* and the line of cases preceding it, this Court has placed great emphasis on the importance of a defendant's right to assert self-defense when there is "any evidence" to support it, and has taken pains to make sure the burden to disprove self-defense remains on the State. *See State v. Addison,* 343 S.C. 290, 540 S.E.2d 449 (2000); *State v. Wiggins,* 330 S.C. 538, 500 S.E.2d 489 (1998).

Although the court charged self-defense properly in Petitioner's case, that charge was negated by the court's unwarranted charge on mutual combat. We find that the court's mutual combat charge acted as a limitation on the Petitioner's ability to claim self-defense, and prejudiced him by transferring the *State's burden* to disprove self-defense onto the Petitioner, forcing him to prove self-defense in violation of *Burkhart; Addison, and Wiggins.*

## CONCLUSION

For the foregoing reasons, we **REVERSE** Petitioner's convictions and **REMAND** for a new trial.[4]

---

4. We reverse Petitioner's conviction for Possession of a Firearm or Knife during Commission of a Violent Crime in addition to his murder

MOORE and WALLER, JJ., concur. PLEICONES, J., concurring in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES concurring:

I agree with the majority that petitioner is entitled to a new trial because the evidence did not warrant a charge on the doctrine of mutual combat. I write separately, however, because while I concur in the result reached here, and in most of the majority's reasoning, I continue to believe that we should not place the burden on the State to disprove a claim of self-defense. *See State v. Burkhart*, 350 S.C. 252, 265, 565 S.E.2d 298, 305 (2002).

BURNETT, J., concurs.

---

conviction because Petitioner's murder conviction served as the prerequisite violent crime for his weapons charge conviction. S.C.Code Ann. § 16–23–490 (2003) (stating that the penalties of § 16–23–490 "may not be imposed unless the person convicted was at the same time indicted and convicted of a violent crime"). Therefore, without the murder conviction, Petitioner's conviction for violation of § 16–23–490 cannot stand.