THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
 Donald S.
 Becker, Petitioner,
 v.
 State of South
 Carolina, Respondent.
 
 
 

Appeal From Georgetown County
Benjamin H. Culbertson, Trial Judge
 Larry B. Hyman, Jr., Post-Conviction
Judge

Memorandum Opinion No.  2010-MO-025
 Submitted October 7, 2010  Filed October
11, 2010 

REVERSED

 
 
 
 Deputy Chief Appellate Defender Wanda H. Carter, South Carolina
 Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for
 Petitioner.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant
 Attorney General Christina J. Catoe, of Columbia, for Respondent.
 
 
 

PER CURIAM: 
 Petitioner seeks a writ of certiorari to review an order denying his
 application for post-conviction relief (PCR) and granting him a belated review of his direct appeal issues
 pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974).
Petitioner was convicted of criminal domestic violence of a high
 and aggravated nature (CDVHAN) and sentenced to ten years imprisonment.  No
 direct appeal was taken.  Thereafter, petitioner filed a PCR application
 alleging he was denied his right to a direct appeal because plea counsel failed
 to properly perfect an appeal after petitioner asked counsel to do so.[1]  The PCR judge found that petitioner
 did not knowingly and voluntarily waive his right to a direct appeal.  
Because there is sufficient evidence to support the PCR judges
 finding that petitioner did not knowingly and intelligently waive his right to
 a direct appeal, we grant the petition for a writ of certiorari, dispense with
 further briefing, and proceed with a review of the direct appeal issue pursuant
 to Davis v. State, 288 S.C. 290, 342 S.E.2d 60 (1986).
FACTS
On
 September 24, 2007, the victim gave a statement to police indicating that
 petitioner hit her on the elbows, knees, and head with an iron bar and choked
 her until she could barely breathe.  The victim further stated that she jumped
 into a nearby lake to get away from petitioner.  At trial, the victim recanted her statement
 and testified that petitioner did not attack her, and her head injury was the
 result of a fall.[2] 
 The victim also stated that she fell into the lake and did not jump in to avoid
 petitioner.  
The victim
 acknowledged giving a statement to police indicating that petitioner attacked
 her, but she testified that she lied to the police because she and petitioner
 were fighting and she was angry.  The victim stated that, on the day of the
 incident, she wanted the police to arrest petitioner because she was drunk and
 angry and afraid petitioner was going to leave her.  
The victim
 admitted being an alcoholic and using drugs and testified that she did not
 remember what she told the police.  The victim testified that, at the time of
 the attack, she had been drinking vodka for four days, and she commonly blacks
 out when she drinks.  The victim stated that on several occasions she has
 injured herself by falling.  
Georgetown
 County Sherriffs Deputy John Magann testified that he responded to the alleged
 assault.  Officer Magann testified that, upon his arrival at the scene, he
 observed an injury to the victims forehead and noticed that the victims
 clothing was soaking wet.  Officer Magann stated that the victim appeared
 highly upset and smelled of alcohol.  Officer Magann testified the victim
 informed him that she had been drinking, but she did not believe she was
 drunk.  The victim told Officer Magann that petitioner inflicted her head
 injuries with an iron bar and choked her until she could barely breathe and
 that she jumped in the nearby lake to get away from petitioner.  Officer Magann
 stated that he did not observe any marks, scratches or bruising around the victims
 neck, but, based on his ten years of experience as a first responder, the
 victims head injuries were consistent with being inflicted by a metal pipe.  
Officer
 Magann testified that he followed the victim to the area where the incident
 occurred[3] to look for petitioner and other evidence of the crime.  Officer Magann stated
 that he observed charred remnants of a steel-framed tent, but he did not find
 petitioner or any piece of pipe appearing to have been used in the attack.  He
 also testified that he did not observe any sharp objects on the embankment
 leading to the nearby lake.  
Donna
 Roberts, an emergency room nurse at Waccamaw Community Hospital, testified that
 she treated the victim on the day of the incident.  Roberts testified that when
 the victim arrived at the hospital, her clothes were soaking wet, she was
 bloody, and she had leaves and twigs in her hair.  Roberts testified that the
 victim had two wounds on her headone on her forehead and another on the top of
 her head.[4] 
 Roberts stated that the victims medical records reflected no other trauma,
 bruising, or tenderness on her elbows or knees.  
Roberts
 further stated that the victim appeared to be intoxicated and under duress. 
 Roberts testified that, in spite of the intoxication, the victim appeared to
 understand her questions and respond appropriately, and did not appear to have
 difficulty recalling how she became injured.  Roberts testified that the victim
 told her that she had been hit in the head with a lead pipe by her boyfriend. 
 Roberts stated that the victims injuries were consistent with being inflicted
 by a pipe and were inconsistent with falling down.  
Prior
 to the jury charge, petitioner objected to the trial courts proposed CDVHAN
 instruction, arguing it improperly instructed the jury that the State could
 prove an accompanying element of aggravation by demonstrating a disparity in
 the ages or physical condition of the parties or a difference in gender. 
 Petitioner argued such an instruction was improper 

under S.C. Code
 Ann. § 16-25-65 (Supp. 2009) and asked the trial court to charge the jury under
 the plain language of the statute, which does not reference aggravating
 circumstances.  
The
 trial court denied petitioners motion and thereafter instructed the jury on
 CDVHAN as follows:

 In order to convict [petitioner] of [CDVHAN] the State must prove
 beyond a reasonable doubt that [petitioner] caused physical injury to a member
 of [petitioners] own household accompanied by circumstances of aggravation.
 . . .
 Circumstances of aggravation can include a great disparity in
 the ages or physical condition of the parties, a difference in gender, serious bodily injury to the victim or the use of a deadly weapon.

(emphasis added).   
ISSUE
Did the trial
 court erroneously instruct the jury on the offense of CDVHAN?
DISCUSSION
Petitioner argues the trial courts jury
 instructions on CDVHAN improperly expanded the definition of the offense,
 permitting the jury to convict on aggravating circumstances that were supported
 by the facts of the case but not intended by the legislature.  We agree.
An
 appellate court will not reverse a trial judges decision about jury
 instructions absent an abuse of discretion.  State v. Pittman, 373 S.C. 527, 647 S.E.2d
 144 (2007).  An abuse of discretion occurs where the trial courts ruling is
 based on an error of law or, when grounded in factual conclusions, is without
 evidentiary support.  Id.
The
 trial judge is required to charge the current and correct law of South
 Carolina.  State v. Taylor, 356 S.C. 227, 589 S.E.2d 1 (2003).  A trial
 court commits reversible error where it instructs the jury on elements that are
 not included in the statutory offense.  State v. Rothell, 301 S.C. 168,
 391 S.E.2d 228 (1990) (finding reversible error where a trial court instructed
 the jury on an issue that was not an element of the statutory offense because
 the jury could have been misled).  
To
 warrant reversal, a trial judges charge must be both erroneous and
 prejudicial.  Taylor, supra.  If a jury instruction is deemed
 erroneous, the Court must determine whether there is a reasonable likelihood
 that the jury applied the improper instruction in a way that violates the
 constitution.  Tate v. State, 351 S.C. 418, 570 S.E.2d 522 (2002).  Due
 process forbids the State to convict a person of a crime without proving the
 elements of that crime beyond a reasonable doubt.  Bunkley v. Florida,
 538 U.S. 835 (2003).  
In
 determining whether an erroneous instruction is prejudicial, the evidence will
 be construed in the light most favorable to the accused.  State v. Bradley,
 126 S.C. 528, 120 S.E. 240 (1923).  An insubstantial error not affecting the
 result of the trial is harmless where guilt has been conclusively proven by
 competent evidence such that no other rational conclusion can be reached.  State
 v. Pagan, 369 S.C. 201, 631 S.E.2d 262 (2006).    
South
 Carolina Code § 16-25-65(A) states that a person is guilty of CDVHAN when a
 person commits one of the following:

 
 (1) an assault and battery which involves the use of a deadly
 weapon or results in serious
 bodily injury to the victim; or
 (2) an
 assault, with or without an accompanying battery, which would reasonably cause
 a person to fear imminent serious bodily injury or death.
 

S.C. Code Ann. § 16-25-65(A)
 (Supp. 2009).  Although the statute formerly incorporated the elements of
 assault and battery of a high and aggravated nature (ABHAN),[5] the statute was amended in 2003, and the language incorporating ABHAN was
 removed.
Petitioner argues the trial courts charge improperly led to a
 guilty verdict because it allowed the jury to convict on factual elements of
 the case that were not contemplated by the legislature.  Specifically,
 petitioner claims that a great disparity in the ages or physical condition of
 the parties and a difference in gender are not proper elements upon which a
 jury may convict a person of CDVHAN.  
 In
 return, the State argues that the jury instructions, on the whole, charged the
 correct law, including the elements involving serious bodily injury and the use
 of a deadly weapon.  However, the State argues that, assuming the jury charge
 was improper, any error did not contribute to the verdict and did not prejudice
 petitioner because the State presented overwhelming evidence of petitioners
 guilt on the proper elements of CDVHAN.  
The
 trial courts jury instruction amounted to an error of law because it permitted
 the jury to convict petitioner of CDVHAN based on a finding that petitioner
 caused physical harm to the victim, coupled with a difference in gender or a
 disparity in age or physical condition, which are not elements of the statutory
 offense.  See Bunkley, supra; Pittman, supra; Taylor, supra; Tate, supra; Rothell, supra. 
 There is no way to determine from the record whether the jury found petitioner
 guilty based on a proper finding that petitioner inflicted serious bodily
 injury or used a deadly weapon, or whether the jury found petitioner merely
 caused some physical harm accompanied by a difference in gender or a disparity
 in age or physical condition, which are not proper elements of CDVHAN.  See S.C. Code Ann. § 16-25-65(A) (Supp. 2009).  
Further,
 construing the evidence in the light most favorable to petitioner, the jury
 could have found petitioner guilty of the lesser included offense of simple
 criminal domestic violence (CDV).[6]  See S.C. Code Ann. § 16-25-10(A) (Supp. 2009); Bradley, supra. 
 Despite the victims statement to police that petitioner hit her on her knees
 and elbows and strangled her, Officer Magann testified that he observed no
 marks on the victims neck, and the victims medical chart indicated no trauma
 on her body aside from the two head wounds.  Further, Nurse Roberts testified
 that head wounds bleed profusely if one of the many blood vessels in the head
 is damaged.
Construing
 that evidence in the light most favorable to petitioner, the jury could have
 attributed the excessive amount of blood to the fact that the wound was located
 on the victims head, and the jury reasonably could have determined that
 petitioner caused some physical harm, but did not seriously injure the victim
 or use a deadly weapon.  Thus, had the
 CDVHAN charge not improperly included a disparity in the ages or physical
 condition of the parties or a difference in gender as aggravating
 circumstances, the jury may have found petitioner not guilty of CDVHAN, but
 guilty of the lesser included offense of CDV.  Accordingly, because it is unclear whether the jury found
 each element of CDVHAN beyond a reasonable doubt, and the erroneous jury
 instruction was not harmless beyond a reasonable doubt, the instruction
 constitutes reversible error.  See Bunkley, supra; Pagan, supra; Taylor, supra; Tate, supra; Rothell, supra. 
Because
 resolution of this issue is dispositive, we decline to address the remaining
 issues raised by petitioner.  See State v. Allen, 370 S.C. 88,
 634 S.E.2d 653 (2006) (declining to address remaining issues where resolution
 of prior issue is dispositive).
CONCLUSION
Because
 the trial courts jury instruction amounted to an error of law and the
 erroneous jury instruction was not harmless beyond a reasonable doubt,
 petitioners conviction is
REVERSED.
TOAL,
 C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

[1] The State conceded that
 petitioner was denied his right to a direct appeal.  
[2] During the victims testimony, the trial judge
 instructed petitioner to discontinue signaling answers to the witness. 
 Further, we note the victim was granted immunity for lying under oath.  
[3] The victim told Officer Magann that the incident
 occurred where she, petitioner, and another man lived in a tent near a lake in
 Murrells Inlet.  Initially, the three lived in a metal-framed tent, but that
 tent burned, and they thereafter crafted another tent by tying a rope between
 two trees and draping a mesh tarp over it.  
[4] Roberts testified that the wound on the victims
 forehead was about two inches long, and the hospital staff was easily able to
 control the bleeding from that wound.  However, Roberts stated that the wound
 on the top of the victims head was about three inches long and bled profusely
 for some time.  Roberts stated that the head is very venous, and bleeding can
 be difficult to control if you nick one of the many veins in the head.  
[5]ABHAN is defined as an unlawful act of violent injury
 to the person of another, accompanied by circumstances of aggravation, such as
 the use of a deadly weapon, the infliction of serious bodily injury, the intent
 to commit a felony, the great disparity of the ages and physical conditions of
 the parties, a difference in sexes, indecent liberties or familiarities with a
 female, the purposeful infliction of shame and disgrace, resistance to lawful
 authorities, and others.  See State v. Jones, 133 S.C. 167, 130
 S.E. 747 (1925), overruled on other grounds by State v. Foust,
 325 S.C. 12, 479 S.E.2d 50 (1996).
[6] The jury was instructed on CDV.