# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jerome Campbell, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2018-000464

———————

Appeal from Charleston County
William H. Seals, Jr., Circuit Court Judge

———————

Opinion No. 5999
Heard February 16, 2023 – Filed July 19, 2023

———————

**AFFIRMED**

———————

Clarence Rauch Wise, of Greenwood, for Petitioner.

Assistant Attorney General Zachary William Jones, of
Columbia, for Respondent.

———————

**GEATHERS, J.:**  In this post-conviction relief (PCR) action, Petitioner Jerome
Campbell (Campbell) seeks review of an order dismissing his claim of ineffective
assistance of counsel.  Campbell argues that the PCR court erred in finding that
Campbell's trial counsel was not ineffective in failing to object to the trial court's
mutual combat charge.  We affirm.

## FACTS

This case involves a convoluted web of familial and domestic quarrels, two
of which give rise to the following events.

The first was a dispute between the husband of Campbell's niece, Anthony German (Anthony), and Campbell's sister and mother. Campbell's sister and mother called Anthony to ask if he and his wife would visit with their newborn child. They refused. Campbell was made aware of Anthony's refusal and promptly informed Anthony that he intended to kill him for not visiting his mother and sister with the child.

The second event arose from a marital dispute between Campbell's sister and her husband, Michael Allen (Allen), later that day. Campbell's mother and Allen's brother, Frank Haigler (Frank) were invited over to the apartment to mediate tensions, but their efforts proved unsuccessful. Inexplicably, Anthony and his brother Michael German then arrived and forced their way into Allen's apartment. While inside the apartment, Michael German said to Campbell's mother that he was going to kill her son. After Campbell's mother threatened to call the police, Allen, Frank, and the German brothers left Allen's apartment and drove to Anthony's apartment. Then, Campbell's sister and mother notified Campbell about the events. In response, Campbell called Allen to let him know that Campbell would be stopping by Anthony's apartment shortly.

Later that afternoon, Campbell arrived at Anthony's apartment in his white Chevrolet Impala accompanied by two individuals. As Campbell entered the parking lot of Anthony's apartment complex, he approached Allen, Frank, and the German brothers, who were standing outside. Campbell shouted at the men, and Frank cautiously approached the vehicle. Campbell rolled down the rear side window and aimed a pistol at Frank. Frank shouted, "[y]o, everybody back up because he's got a gun." Anthony's mother—who was at Anthony's apartment at the time—heard Frank and yelled "[g]et in the house, get in the house[,]" which prompted Campbell to speed off. Frank testified that Allen received a number of threatening phone calls from Campbell shortly after he left the complex. During one of the calls, Campbell told Allen while on speaker phone, "[y]ou better not come home. I'll be there soon."

In response to Campbell's threats, Anthony retrieved his pistol, and Frank, Allen, and the German brothers made their way to Allen's apartment complex to confront Campbell. Instead of driving into the complex, they decided to park at a gas station across the street. Allen and the German brothers stayed back at the gas station while Frank crossed the street unarmed in an attempt to defuse the situation. In the parking lot of Allen's apartment complex, Frank and Campbell had a brief exchange that culminated in Campbell punching Frank in the face. Campbell then

gestured toward two unknown individuals who began to approach with shotguns.[1] Frank darted down an alleyway adjacent to the apartment complex and crawled towards the road in the direction of the gas station. Campbell and the two unknown gunmen entered his white Chevrolet Impala and drove toward the gas station across the street. Allen and the German brothers spotted the vehicle, dove to the ground, and a fusillade of gunshots were fired in both directions.[2] Michael German was struck by gunfire and pronounced dead at the scene. The cause of death was determined to be a gunshot wound to the left side of his head. That night, Campbell surrendered himself to the police department.

On January 23–27, 2012, Campbell was tried before a jury and convicted of the murder of Michael German as well as three counts of assault with intent to kill (AWIK). Campbell was sentenced to thirty years' imprisonment for murder and ten years for each count of AWIK, to run concurrently. Campbell appealed, and this court affirmed his convictions in an unpublished opinion.[3] On May 12, 2014, Campbell filed a PCR application. On January 9, 2018, his application was denied and dismissed with prejudice. The PCR court found that "the trial court's instruction on mutual combat was supported by the evidence presented at trial and any objection would not have been successful." This appeal followed.

## STANDARD OF REVIEW

"In a PCR case, [our appellate courts] will uphold the PCR court's factual findings if there is any evidence of probative value in the record to support them." *Thompson v. State*, 423 S.C. 235, 239, 814 S.E.2d 487, 489 (2018). "However, this [c]ourt gives no deference to the PCR court's conclusions of law, and we review those conclusions de novo." *Id*.

## LAW/ANALYSIS

### I.     Background on Mutual Combat

---

[1] It is unclear from the record whether these were the same individuals who accompanied Campbell to Anthony's apartment earlier that day.

[2] There is conflicting evidence as to whether Anthony's pistol was ever fired. However, a high level of gunshot residue was found on Michael German's hand. At trial, Chris Robinson, a forensic consultant employed as an expert witness, stated, "I can a hundred percent say [firing a weapon is] the only way in all my training that I know that you can get [gunshot residue] levels that were [] that high[.]"

[3] *State v. Campbell*, Op. No. 2013-UP-338 (S.C. Ct. App. 2013 filed Aug. 7, 2013).

"The doctrine of mutual combat has existed in South Carolina since at least 1843," but had fallen out of common use until its recent resurgence. *State v. Taylor*, 356 S.C. 227, 231, 589 S.E.2d 1, 3 (2003). To constitute mutual combat, there must be "mutual intent and willingness to fight." *State v. Graham*, 260 S.C. 449, 450, 196 S.E.2d 495, 495 (1973). The intent to fight is "manifested by the acts and conduct of the parties and the circumstances attending and leading up to the combat." *Id*. Additionally, "[t]he State is required to prove the rival combatants were armed for the mutual combat with deadly weapons and each combatant knew the others were armed." *State v. Young*, 429 S.C. 155, 160, 838 S.E.2d 516, 519 (2020). In 2003, our supreme court in *Taylor* revised the long-established doctrine by cementing within our jurisprudence both the knowledge requirement between combatants and the requirement that "the fight arise out of a pre-existing dispute[.]" 356 S.C. at 233–234, 589 S.E.2d at 4–5.

To illustrate a scenario in which a newly-revised mutual combat charge would be warranted, the court in *Taylor* cited its reasoning in *Graham*:

> *[t]here was ill-will between the parties. They had threatened each other[,] and it is inferable that they had armed themselves to settle their differences at gun point.* Under these circumstances, the apparent willingness of each to engage in an armed encounter with the other[] sustained an inference that they were engaged in mutual combat at the time of the killing[] and required that the issue be submitted to the jury for determination.

*Id*. at 234, 589 S.E.2d at 4 (quoting *Graham*, 260 S.C. at 452, 196 S.E.2d at 496). The court in *Taylor* distinguished its facts from *Graham* in finding that "[t]here is no evidence . . . that there was any pre-existing ill-will or dispute between [the combatants], and there is no evidence that [the victim] was willing to engage in an *armed* encounter with Petitioner." *Id*. at 234, 589 S.E.2d at 5.

## II. Ineffective Assistance of Counsel

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013). "To establish ineffective assistance of counsel, the PCR applicant must prove (1) counsel's performance fell below an objective standard of reasonableness, and (2) the applicant sustained prejudice as a

result of counsel's deficient performance." *Thompson*, 423 S.C. at 239, 814 S.E.2d at 489. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland v. Washington*, 466 U.S. 668, 700 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [appellant] makes an insufficient showing on one." *Id*. at 697.

### A. Factual Basis for Mutual Combat Charge

Campbell argues that his trial counsel was deficient in failing to object to the mutual combat charge because there was a lack of factual support for the charge. We disagree.

With regard to a showing of deficient performance, a PCR applicant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.

In the present case, the evidence supports a jury instruction on mutual combat. We believe the following set of facts gleaned from *Graham* resemble those before us on appeal:

> Appellant and deceased had quarreled prior to the day of the killing. Both had made threats against the other[,] and appellant purchased a pistol on the night before the fatal encounter. They met in town shortly before the shooting and engaged in a heated discussion, during which appellant waved a pistol in the face of the deceased. The deceased, who apparently had no weapon at the time, then drove out of town in his truck, returning a short time later with his pistol. When the deceased returned, he parked his truck in front of a barber shop and got out with his pistol in his hand. As the deceased left his truck, appellant, who was in the barber shop and had observed the deceased's return, walked into the street, placing himself in a position where an encounter with the deceased could be expected. Appellant could see the weapon in the possession of the deceased, and the deceased knew that appellant was armed. As appellant entered the street from the barber shop, both parties fired at each other. The deceased was mortally wounded and died a short time thereafter.

260 S.C. at 451, 196 S.E.2d at 496.

Here, the following events run parallel to those in *Graham*. Campbell quarreled with and threatened Allen and Anthony prior to the fatal encounter. Campbell met with Allen, Frank, and the German brothers before the shooting. At this brief confrontation, Campbell flashed a pistol at Frank, who was unarmed at the time. After a brief interval, Campbell along with two other individuals retrieved two shotguns and headed to Allen's apartment. Anthony collected his firearm shortly after and he, Frank and the German brothers went to gas station in close proximity to Allen's apartment. Frank attempted to broker détente, but this went awry when Campbell punched him in the face and the two men accompanying Campbell approached with shotguns. Campbell and the unknown gunmen entered Campbell's Impala and drove to the convenience store across the street, where Allen and the German brothers were standing. Forensic evidence later supported a finding that both sides fired at each other, resulting in Michael German's death.

"Under [the circumstances in *Graham*], the apparent willingness of each to engage in an armed encounter with the other[] sustained an inference that they were engaged in mutual combat at the time of the killing[] and required that the issue be submitted to the jury for determination." *Graham*, 260 S.C. at 452, 196 S.E.2d at 496. Similarly, in the present case, the apparent willingness of each combatant, including Campbell, to engage in an armed encounter creates an inference of mutual combat that necessitated a corresponding charge to be submitted to the jury. Therefore, Campbell's trial counsel's decision not to object to the jury charge did not fall below an objective standard of reasonableness.

## B. Permissibility of Burden Shifting

Campbell additionally argues that his trial counsel's failure to object to the mutual combat charge constituted ineffective assistance of counsel because the charge impermissibly shifted the burden of proof on self-defense to Campbell. Campbell's brief frames this as an issue of prejudice; however, the relevance of any prejudice to Campbell is predicated on whether his trial counsel was deficient in failing to object to the mutual combat charge. Thus, we must first determine whether Campbell's trial counsel was deficient in failing to object to the jury charge under this alternative rationale before considering whether to undertake a prejudice analysis. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [appellant] makes an insufficient showing on one.").

"Mutual combat relates primarily to the law of self-defense." *State v. Bowers (Bowers II)*, 436 S.C. 640, 647, 875 S.E.2d 608, 612 (2022).[4]  Self-defense comprises four elements—the first of which relates to the doctrine of mutual combat. *See id*. ("[Our supreme c]ourt has explained self-defense by referring to four elements."); *see also State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011) (listing each of the four elements of self-defense).  Termed the "'no fault' element of self-defense[,]" the first element requires a defendant to be "without fault in bringing on the difficulty." *Taylor,* 356 S.C. at 232, 235, 589 S.E.2d at 3, 5 (quoting *State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984)).  "[I]f a defendant is found to have been involved in mutual combat, the 'no fault' element of self-defense cannot be established." *Id.* at 232, 589 S.E.2d at 3.  In other words, "mutual combat acts as a bar to self-defense . . ." *Id*. at 234, 589 S.E.2d at 4.  A defendant may by word or act withdraw from mutual combat and restore their right to self-defense, but this action must be known to the opposing combatant. *See Young*, 429 S.C. at 161, 838 S.E.2d at 519 ("A combatant may withdraw from mutual combat if he 'endeavors in good faith to decline further conflict[] and, either by word or act, makes that fact known to his adversary.'" (quoting *Graham*, 260 S.C. at 451, 196 S.E.2d at 496)).

Campbell takes issue with the circuit court's instruction that "[i]f the defendant voluntarily participated in mutual combat for purposes other than protection, the killing of the victim would not be self-defense."  Specifically, Campbell believes the instruction conflicts with his understanding of *Taylor*'s holding "that it is improper for a trial court to charge both self-defense and mutual combat."  However, this oversimplified interpretation of *Taylor* distorts its meaning.  In *Taylor*, our supreme court found that the burden of proof impermissibly shifted to the defendant to prove self-defense when a self-defense "charge was negated by the court's *unwarranted* charge on mutual combat." 356 S.C. at 235, 589 S.E.2d at 5 (emphasis added).[5]

---

[4] Our supreme court granted certiorari on *State v. Bowers* (*Bowers I*), 428 S.C. 21, 832 S.E.2d 623 (Ct. App. 2019), *aff'd*, 436 S.C. 640, 875 S.E.2d 608 (2022), but on an issue different from the mutual combat issue before this court. *See Bowers II*, at 645–46, 875 S.E.2d at 611 ("The State does not challenge the court of appeals' analysis of the evidence or its ruling that the doctrine of mutual combat is not applicable.  Rather, the State challenges whether the court of appeals' ruling on that issue requires reversal of the ABHAN conviction.").

[5] In a similar misunderstanding, Campbell asserts that this court in *Bowers I* "found that the mere charge as to mutual combat was prejudicial because it negated self-defense."  The *Bowers* court found "the *erroneous* charge on mutual combat was prejudicial because the charge effectively negated Appellant's self-defense plea."

However, when evidence warrants a mutual combat charge, it may be charged to a jury even when read alongside a self-defense charge. *See State v. Jackson*, 384 S.C. 29, 38 n.5, 681 S.E.2d 17, 21 n.5 (Ct. App. 2009) ("We do not suggest mutual combat and self-defense are mutually exclusive; rather, in *Taylor*, there was no evidence that the victim was willing to engage in mutual combat with [the defendant].").

In the present case, the State presented evidence to support a jury charge on mutual combat. Because the charge was warranted, Campbell's trial counsel was not deficient in failing to object to its reading alongside the circuit court's jury charge on self-defense. *See Jackson*, 384 S.C. at n.5, 681 S.E.2d at n.5 (clarifying that when "there [is] no evidence [a] victim [is] willing to engage in mutual combat[,]" charging mutual combat and self defense creates unfair prejudice; however, "mutual combat and self-defense are [not] mutually exclusive" when mutual combat is supported by the evidence).

## CONCLUSION

Accordingly, the PCR court's dismissal of Campbell's ineffective assistance of counsel claim is

**AFFIRMED.**

**WILLIAMS, C.J., and VERDIN, J., concur.**

---

*Bowers I*, 428 S.C. at 37, 832 S.E.2d at 632 (emphasis added). Like the description of the charge in *Taylor* as "unwarranted," the operative word in *Bowers* was "erroneous."