**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Joquell Wayne Myers, Appellant.

Appellate Case No. 2022-001428

———————

Appeal From Sumter County
Kristi F. Curtis, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-007
Heard December 10, 2025 – Filed January 14, 2026

———————

**AFFIRMED**

———————

Kenneth R. Young, Jr., and Lewis Hartwell Warr, both of Sumter, for Appellant.

Attorney General Alan McCrory Wilson, and Senior Assistant Attorney General Mark Reynolds Farthing, both of Columbia, for Respondent.

———————

**PER CURIAM:** Joquell W. Myers appeals his convictions for attempted murder, unlawful carrying of a pistol, and possession of a weapon during the commission of a violent crime. This case involves a shootout at a Sumter Sunoco gas station in which twelve different guns fired between sixty and seventy shots. Myers was

charged with (1) the murder of Gregory Middleton, (2) the attempted murder of Christopher Fordham, (3) the attempted murder of Michael Lucas, (4) possession of a firearm during the commission of a violent crime, and (5) unlawful carrying of a pistol. On appeal, Myers argues the trial court erred by charging the jury on mutual combat, thereby prejudicing his claim of self-defense. We affirm.

We hold the trial court properly instructed the jury on mutual combat because there was evidence to support the charge. *See State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000) ("The law to be charged must be determined from the evidence presented at trial."); *State v. Young*, 424 S.C. 424, 432-33, 818 S.E.2d 486, 490 (Ct. App. 2018) (finding to constitute mutual combat, the State must show (1) "a mutual intent and willingness to fight," (2) "an antecedent agreement to fight," and (3) "the combatants [were] armed and kn[e]w the other party [was] armed"), *aff'd*, 429 S.C. 155, 838 S.E.2d 516 (2020); *State v. McGowan*, 430 S.C. 373, 379, 845 S.E.2d 503, 505 (Ct. App. 2020) ("An appellate court will not reverse a [trial] court's decision regarding a jury instruction unless there is an abuse of discretion."); *State v. Brooks*, 428 S.C. 618, 625, 837 S.E.2d 236, 239 (Ct. App. 2019) ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." (quoting *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166-67 (2007))).

Sometime before the night of the shootout, Diontrae Epps, Myers's half-brother and co-combatant, posted a video to Facebook. In the video, Epps, Myers, and Jay McBride can be heard and seen singing and dancing while seemingly threatening to "send goons"[1] at Michael Rogers and give him and his car a "new makeover." In the background of the video, Myers briefly makes hand gestures and McBride appears to mimic shooting a gun at the camera. Rogers was aware of the video, as evidenced by his girlfriend, Arkell Eaglin's, testimony that she was concerned about the video and told Rogers about it.

Myers, Epps, and Rogers were all present at the Sunoco on the night of the shooting. Lucas drove Rogers, Middleton, Lucas, and Tyrek Archie to the Sunoco in a Dodge Charger a few minutes prior to the start of the gunfire. Timothy Scarborough, one of Rogers's friends who was there on the night of the incident, testified there were "stories" circulating about the "situation" with Epps's group and Rogers's group. Scarborough testified Epps and his group "had guns out" and he stated it seemed like everyone in the parking lot had a gun. He recalled the

_____

[1] Detective Willie McFadden testified at trial that a "goon" is a soldier for a gang.

scene was very hostile. Another member of Rogers's group, Archie, also testified there was a lot of tension in the air on the night of the shootout. During his testimony, Myers acknowledged that everyone in his "group" was armed.

After arriving at the Sunoco, Rogers appeared to confront Epps, which ultimately led to the shootout. McFadden testified Rogers was also armed that night and appeared to pull out his gun just before the shooting started.[2] Further, Scarborough testified it seemed like everyone knew who was going to be at the Sunoco that night, and it is clear from his testimony that he and Rogers were aware of Epps's presence almost immediately upon exiting the Charger; yet, Rogers did not leave the scene. Rather, as noted above, he did the opposite and approached Epps in an arguably hostile manner. *See State v. Graham*, 260 S.C. 449, 450, 196 S.E.2d 495, 495 (1973) (finding there must be evidence of "mutual intent and willingness to fight" that is "manifested by the acts and conduct of the parties and the circumstances attending and leading up to the combat" for a mutual combat charge); *State v. Bowers*, 428 S.C. 21, 34, 832 S.E.2d 623, 630 (Ct. App. 2019) (finding "case law unequivocally indicates that it is essential there is evidence of a pre-existing ill-will between the parties and that both parties are armed with deadly weapons and have knowledge that the other is armed"), *aff'd*, 436 S.C. 640, 875 S.E.2d 608 (2022).

Although we acknowledge Myers was perhaps only tangentially involved in the pre-existing disagreement between Epps and Rogers, he is still guilty as a co-combatant. Based on *State v. Bowers*, Epps and Rogers were co-combatants and responsible for the whole shootout. *See* 436 S.C. 640, 650, 875 S.E.2d 608, 613 (2022) (explaining that "when the prior dispute leads to a multi-person shootout, the participants in the prior dispute are at fault not only as to their mutual [combat], but also in bringing on the entire shootout"); *id.* at 649-50, 875 S.E.2d at 613 (noting that "[a defendant's] mutual combat with anyone would preclude [that defendant] from self-defense as to any victim killed or injured during the shootout"). Furthermore, Myers is equally responsible because he joined in the combat. *See State v. Young*, 429 S.C. 155, 161, 838 S.E.2d 516, 519 (2020) (stating "criminal liability may be imposed on all combatants for the death of one of the participating parties because all are presumed to know and intend the consequences that naturally flow from their unlawful acts," regardless of "which side(s) the combatant or the deceased fought"); *id.* at 164, 838 S.E.2d at 520-21

---

[2] At trial, Myers elicited the testimony from McFadden that Rogers pulled out his gun as he approached Epps. Therefore, there was some evidence in the record to show that Epps knew Rogers was armed just prior to the shooting.

("[C]o-combatants who aid and incite one another to engage in the fight that leads to the death or injury of an innocent bystander are equally criminally liable."); *State v. Brown*, 108 S.C. 490, 499, 95 S.E. 61, 63 (1918) ("If one comes to the assistance of his friend or relative, and takes part in a difficulty in which such friend or relative is engaged, he enters the combat upon the same footing of the person to whose assistance he comes, and under the same legal status."). Myers willfully entered into the combat when he began firing shots in the direction of Rogers, Middleton, and the Dodge Charger. *See Young*, 429 S.C. at 160, 838 S.E.2d at 518-19 ("[I]t is not necessary that there should be a positive agreement between the participating parties to enter the combat; it is sufficient if they [willfully] enter into the conflict, *upon the impulse of the moment*." (alteration in original) (emphasis added) (quoting *Brown*, 108 S.C. at 499, 95 S.E. at 63)). Myers testified when he heard gunshots and saw Epps was shot, he ran to get his own gun. From the security footage, Myers can be seen firing his gun in the direction of Rogers and Middleton. Myers also admitted to firing shots at the Charger Lucas was driving as it was leaving the scene.

Finally, Myers essentially argues that the trial court erred in charging both mutual combat and self-defense and asserts that the overwhelming weight of precedent recognizes an inherent incompatibility between the two instructions. He references *State v. Taylor*[3] in support of this position. However, *Campbell v. State* specifically explains that the court in *Taylor* held the mutual combat instruction was not warranted based on the facts of that case. 441 S.C. 361, 371-72, 893 S.E.2d 492, 497-98 (Ct. App. 2023). Therefore, we find it is appropriate to charge both when warranted by the circumstances. *See id.* at 372, 893 S.E.2d at 497-98 (finding "when evidence warrants a mutual combat charge, it may be charged to a jury even when read alongside a self-defense charge"); *State v. Jackson*, 384 S.C. 29, 38 n.5, 681 S.E.2d 17, 21 n.5 (Ct. App. 2009) ("We do not suggest mutual combat and self-defense are mutually exclusive; rather, in *Taylor*, there was no evidence that the victim was willing to engage in mutual combat with [the defendant]."). The trial court has a duty to give an instruction when it is warranted by the evidence, and our court's job is only to determine whether the trial court abused its discretion in doing so. *See Ross v. Paddy*, 340 S.C. 428, 437, 532 S.E.2d 612, 617 (Ct. App. 2000) ("Ordinarily, a trial [court] has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence."); *McGowan*, 430 S.C. at 379, 845 S.E.2d at 505 ("An appellate court will not reverse a [trial] court's decision regarding a jury instruction unless there is an abuse of discretion.").

---

[3] 356 S.C. 227, 589 S.E.2d 1 (2003).

Accordingly, we hold the trial court properly charged the jury on mutual combat.[4]

Even if it was error for the trial court to charge the jury on mutual combat, we find the error was not prejudicial because it could not have contributed to the verdict. *See State v. Campbell*, 443 S.C. 182, 191, 904 S.E.2d 441, 445 (2024) ("Erroneous jury instructions are subject to a harmless error analysis."); *State v. Grovenstein*, 335 S.C. 347, 353, 517 S.E.2d 216, 219 (1999) ("[J]urors are presumed to follow the law as instructed to them."). In South Carolina, a mutual combat charge primarily serves to negate the "without fault in bringing on the difficulty" element of self-defense. *See Taylor*, 356 S.C. at 232, 589 S.E.2d at 3 ("Because mutual combat requires mutual intent and willingness to fight, if a defendant is found to have been involved in mutual combat, the 'no fault' element of self-defense cannot be established."). In this case, Myers was charged with the attempted murder of Lucas and Fordham and the murder of Middleton. The security videos from the Sunoco parking lot show Myers shooting at Middleton and Rogers as Middleton was attempting to help the partially paralyzed Rogers off the ground, then running around another car to shoot at Lucas, who was driving away. Then, someone fired at Fordham from the car Myers was in, as Fordham also attempted to aid Rogers. Even if the jury believed Myers's testimony that Lucas was shooting at him from the Charger as he left the scene, the trial court's instruction seemingly limited the doctrine of mutual combat to the charge of murder and/or voluntary manslaughter. Further, there was no evidence that Middleton or Fordham were armed or that they participated in the shooting as anything other than bystanders—put differently, although there was arguably evidence from which the jury could find Lucas was a mutual combatant, there was no evidence that Middleton or Fordham were—*and* we must assume the jury followed the trial court's instruction to limit consideration of mutual combat to the murder charge. Yet, the jury *acquitted* Myers of Middleton's murder and the attempted murder of Fordham and convicted him of the attempted murder of Lucas. Accordingly, we cannot conceive of how the mutual combat charge could have contributed to the verdicts in this circumstance. *See Campbell*, 443 S.C. at 191, 904 S.E. 2d at 445 ("When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" (quoting *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014))).

---

[4] Mutual combat can also be applied to attempted murder charges. *See Bowers*, 436 S.C. at 650, 875 S.E.2d at 613 (recognizing mutual combat as a basis for attempted murder).

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**